# United States Court of Appeals
## For the First Circuit

No. 06-1294

LUIS EDUARDO BERRIO-BARRERA,

Petitioner,

v.

ALBERTO GONZALES,
Attorney General of the United States,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lynch, and Howard,
Circuit Judges.

José A. Espinosa on brief for petitioner.
Timothy E. Curley, Trial Attorney, Civil Division, Peter D. Keisler, Assistant Attorney General, Civil Division, and Anthony Norwood, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

August 25, 2006

**LYNCH**, **Circuit Judge**.  Petitioner Luis Eduardo Berrio-Barrera, a native and citizen of Colombia, petitions for review of a final order of removal of the Board of Immigration Appeals (BIA), which denied his petitions for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  An Immigration Judge (IJ) found that Berrio-Barrera had not previously been persecuted on the basis of a protected ground, and that he had not met his burden of establishing a well-founded fear of future persecution.  The BIA adopted and affirmed the IJ's ruling, specifically adding that Berrio-Barrera had failed to prove he feared future persecution on the basis of a protected ground.  We affirm the BIA and deny the petition.

I.

On March 9, 2003, Berrio-Barrera attempted to enter the United States using fraudulent documents.  In a credible fear interview with an asylum officer four days later, Berrio-Barrera stated that two years earlier he had been kidnapped for ransom by guerillas from the terrorist organization National Liberation Army (ELN), and had remained in their custody for four to five days until he was able to escape.  He further stated that because he had never actually paid the ransom, he feared that the guerillas would attempt to kidnap him again or kill him, and that two months prior to his arrival in the United States they had in fact attempted to do so.  The asylum officer decided that Berrio-Barrera had

-2-

demonstrated a credible fear of persecution, and on March 14 he was served with a Notice to Appear in removal proceedings before an IJ.

Berrio-Barrera conceded removability and on February 4, 2004, filed an application requesting political asylum, withholding of removal, and protection under the CAT. In the application's section for political asylum and withholding of removal, he checked the box indicating that he sought these on the basis of "[p]olitical opinion"; he did not check the box for "[m]embership in a social group." His application also recounted his kidnapping in somewhat more detail, explaining that in September 2000, armed guerillas from the ELN stopped a car in which he was traveling, along with 10 other cars, and asked the occupants of all the cars for identification. Out of the 30 people stopped, four -- including Berrio-Barrera -- were told they were being kidnapped for monetary reasons. After a week, Berrio-Barrera managed to escape and contact his family. But because he feared retaliation by the ELN if he returned home, he instead went to Barranquilla and then Monteria for a period of one-and-a-half years, before returning to his hometown of Bello. His application further stated that in 2002 the ELN discovered his return through informants, went to his home, and asked for him. Although he was not there at the time, he feared for his life and decided to leave Colombia. All of these facts also were recounted in an affidavit he filed along with the application.

-3-

On September 17, 2004, a merits hearing was conducted before an IJ. Berrio-Barrera's application and affidavit were entered into evidence, along with the State Department's most recent country report for Colombia. The sole witness at the hearing was Berrio-Barrera, who testified about his kidnapping. In Colombia, he had been a cattle farmer. His family owned a ranch of approximately 300 acres, and he administered approximately 300 cattle. One day in 2000 -- he testified he did not remember the month -- he was kidnapped by the ELN while he was going to a fair. While in the ELN's custody, one of the guerillas asked him how much he would be worth for ransom; he replied that he "was very poor, [he] was just a worker and . . . had no means to pay a ransom." After several days in the ELN's custody, he managed to escape and contact his family, who picked him up. However, he further testified that he decided to flee his hometown of Bello and go to Monteria and then Barranquilla, where he stayed a combined "two years, two and a half years," and never returned to Bello. He also claimed that while he was in Monteria, he was told the ELN was looking for him, which was why he went to Barranquilla. However, because strange people were asking about him and investigating him there, he decided to flee Colombia. At no point after the kidnapping did anyone actually harm him or his family, although he testified that his family received a number of calls from the ELN.

-4-

In an oral decision issued the same day, the IJ denied the application for asylum. Although the IJ did not expressly make a credibility finding, the IJ noted that Berrio-Barrera's credibility was "somewhat questionable" in light of his inability to remember the month in which the kidnapping took place, and in light of some inconsistencies between his affidavit and hearing testimony.[1] However, the IJ decided to "set[] aside" the credibility issue and rule on the basis that Berrio-Barrera had not shown a nexus between his claimed persecution (i.e. the kidnapping) and any of the statutorily protected categories: race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A). Instead, the evidence showed that Berrio-Barrera had been kidnapped for money. Additionally, Berrio-Barrera had not demonstrated a fear of future persecution. The IJ was willing to assume that Berrio-Barrera subjectively feared persecution, but found that there was no objective showing of fear: Berrio-Barrera had communicated his poverty to the guerillas, the kidnapping was more than four years old, and nothing had happened to him since. Having denied his application for asylum, the IJ also denied his application for withholding of removal. Finally, the IJ denied the CAT

---

[1] For example, in his affidavit Berrio-Barrera said he went to Barranquilla and then Monteria, while his testimony was that he went from Monteria to Barranquilla. Also, his affidavit said that he returned to Bello after being in Monteria and Barranquilla, while his testimony was that he never returned to Bello.

-5-

application, noting that there was no evidence to suggest Berrio-Barrera would be tortured either by the Colombian government or at its acquiescence.

On January 11, 2006, the BIA adopted and affirmed the IJ's ruling in a brief per curiam opinion. The BIA specifically noted its agreement with the IJ that Berrio-Barrera had failed to show either past or future persecution on the basis of a protected ground. Additionally, as to future persecution the BIA noted that while Berrio-Barrera had "argue[d] that he [would] be persecuted on the basis of imputed political opinion if he return[ed] to Colombia, . . . he ha[d] not provided either direct or circumstantial evidence of his alleged persecutors' motives."

II.

Because the BIA adopted and affirmed the IJ's decision, but also added an additional ground, this court reviews the IJ's decision as though it were the BIA's to the extent of the adoption, and the BIA's decision as to the additional ground. See Chen v. Gonzales, 418 F.3d 110, 113 & n.5 (1st Cir. 2005); Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004) ("Ordinarily, this court reviews the decision of the BIA. . . . [W]here the BIA's decision adopts portions of the IJ's opinion, we review those portions of the IJ's opinion that the BIA has adopted."); see also Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004) ("[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for

-6-

the IJ's decision, we have authority to review the decisions of both the IJ and the BIA.").

In order for an alien to establish eligibility for asylum, he must show that he is a "refugee." 8 U.S.C. § 1158(b)(1)(A). This requires that the alien show he has been persecuted, or fears persecution, "on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42)(A); see also Mukamusoni v. Ashcroft, 390 F.3d 110, 119 (1st Cir. 2004). The alien has the burden of proof for establishing eligibility. 8 U.S.C. § 1158(b)(1)(B)(i). Whether an alien has adequately established that his persecution was or will be motivated by one of these protected grounds is a factual question that we review under the deferential "substantial evidence" standard. Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005). Thus we must accept the agency's determination "unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. (quoting 8 U.S.C. § 1252(b)(4)(B)) (internal quotation marks omitted).

Here -- as Berrio-Barrera's brief concedes -- substantial evidence supports the IJ's determination that Berrio-Barrera's past persecution was not motivated by one of the five statutorily protected grounds. Berrio-Barrera testified that the ELN informed him that he had been kidnapped "with the aim of extracting money."

And on cross-examination he conceded that he had been kidnapped for financial reasons.

As to future persecution, Berrio-Barrera argues for the first time on appeal that he falls within one of the protected classes because he fears persecution on the basis of membership in a social group, with the relevant group being former victims of ELN kidnapping who have escaped.

Irrespective of whether this claim has merit, it is one over which this court lacks jurisdiction. When a claim presented to us on appeal has not previously been presented to the BIA, the petitioner has failed to exhaust his administrative remedies, eliminating this court's jurisdiction to review the agency's actions. See Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004); see also 8 U.S.C. § 1252(d)(1). Here, Berrio-Barrera's "social group" claim is completely at variance with his claims during agency proceedings. In his application for asylum, he indicated that he feared persecution on the basis of political opinion, and he left blank the checkbox for membership in a social group. Additionally, his brief to the BIA was based on a claim of imputed political opinion; at no point did he even suggest that he feared persecution on the basis of membership in a social group. Accordingly, Berrio-Barrera cannot now attack the BIA's judgment on the basis of an argument never presented to it.

Since Berrio-Barrera's brief to this court does not advance any claim based on imputed political opinion, that argument is waived. See Mediouni v. INS, 314 F.3d 24, 28 n.5 (1st Cir. 2002).[2] In any event, the finding of no fear of future persecution is supported by substantial evidence.

Finally, because Berrio-Barrera's asylum claim fails, his application for withholding of removal necessarily fails as well. See Mediouni, 314 F.3d at 27.

The petition for review is denied.

---

[2] Similarly, Berrio-Barrera's CAT claim is waived as well. While his brief states that the IJ erred in denying this claim, Berrio-Barrera does not actually argue or present any analysis why the IJ's ruling on this issue was incorrect. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").