# United States Court of Appeals

## For the First Circuit

No. 05-2622

SAMEH AWAD,

Petitioner,

v.

ALBERTO GONZALES,
Attorney General of the United States

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lynch, and Howard,
Circuit Judges.

Saher J. Macarius, Audrey Botros, and Law Offices of Saher J. Macarius, on brief for petitioner.
Jennifer C. Boal, Assistant U.S. Attorney, and Michael J. Sullivan, U.S. Attorney, on brief for respondent.

September 15, 2006

**LYNCH**, **Circuit Judge**.  Petitioner Sameh Awad, a thirty-six-year-old native and citizen of Egypt, petitions for review of a final order of removal of the Board of Immigration Appeals (BIA), which denied his petitions for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  An Immigration Judge (IJ) denied the asylum petition on the grounds that it was untimely, and also found that Awad had not demonstrated his eligibility for withholding of removal or CAT relief.  The BIA agreed that the asylum petition was untimely, and also agreed that Awad was not eligible for either withholding of removal or CAT relief, as he had not shown it was more likely than not that he would be persecuted or tortured if he returned to Egypt.  We lack jurisdiction to review the BIA's timeliness determination; as to the other issues, we affirm the BIA and deny the petition.

                              I.

        On or about October 29, 2001, Awad lawfully entered the United States as a non-immigrant visitor.  He was initially permitted to remain in the country for a maximum of six months, but he received an extension to stay until September 28, 2002.  Awad remained in the United States beyond that date, and on September 24, 2003, he applied for asylum, withholding of removal, and CAT protection.  In support of his application, he claimed he was a Coptic Christian and that he feared persecution in Egypt on the basis of his religious beliefs.

After being served with a Notice to Appear in removal proceedings, Awad conceded removability. On December 7th, 2004, a removal hearing was held before an IJ. As an initial matter, the government argued that the asylum petition was barred because it had not been filed within one year of Awad's entry into the country, or within a reasonable time after the expiration of his lawful status. The IJ decided to take that issue under advisement and proceed with the rest of the hearing. The government then introduced recent State Department reports on Egypt, including the general Country Conditions Report and the Religious Freedom Report.

The sole witness at the hearing was Awad, who testified about various incidents as follows. In one, a Muslim neighbor attacked Awad when he was seven. The neighbor, who was about Awad's age but much bigger in size, pushed him against some stairs and held his neck, threatening to severely injure Awad if he did not pronounce that he was adopting Islam. In another incident, in February 1986, Awad saw a Muslim student and a Christian student trade insults. Although the Muslim student was the aggressor and struck the Christian student, when the police intervened the Christian student received a more severe punishment.

Several other incidents occurred while Awad was in the Egyptian military. One, in 1990, occurred when he had just started working in an army bakery. When he made a mistake spreading the dough, his supervisor slapped him, even though the supervisor did

not slap the Muslim soldiers for similar mistakes. A fellow Christian soldier came to Awad's aid, and the fellow soldier and the supervisor started hitting each other. When a Muslim officer intervened, the supervisor was given no punishment, but Awad and his fellow Christian soldier were ordered to stay in the barracks. In a second incident, in 1991, a Muslim officer slapped Awad for not hurrying up, even though he slapped no other soldiers. In a third incident, an officer took away a 10-day medical leave that Awad had been granted; the officer said he was taking it away because a Christian doctor had given Awad the leave and Awad did not in fact deserve it.

Finally, Awad discussed an incident in which the 15-year-old sister of a close friend had been kidnapped, raped, and forced to convert to Islam and marry her attacker, and in which the police had refused to intervene. He also testified that similar incidents continued to occur in Egypt.

On cross-examination, the government elicited that Awad had previously been in the United States from July of 2000 to May of 2001 and had returned to Egypt after that trip. He had also visited Australia for two months in 1999 and 2000 and then returned to Egypt. On neither of these trips had he applied for asylum.

In an oral decision issued the same day, the IJ denied the petitions for asylum, withholding of removal, and CAT protection. As a threshold matter, the IJ found Awad's testimony

-4-

to be credible. Turning to the asylum issue, the IJ ruled that the application was untimely because it was not filed within one year of Awad's arrival in the country. In any event, the IJ noted that he would have denied the asylum application on the merits. As for the withholding of removal and CAT claims, the IJ found that Awad had not shown that it was more likely than not that he would be subject to persecution or torture as a result of his religious beliefs. According to the IJ, the incidents Awad described did not rise to the level of past persecution[1] and fell far short of establishing that it was more likely than not that Awad would suffer future persecution -- a finding that was further supported by Awad's willingness to return to Egypt twice after international travel, both times without incident. The IJ did grant Awad voluntary departure.

On September 26, 2005, the BIA issued a per curiam opinion agreeing with the IJ's ultimate conclusions. The asylum petition was time barred because it had not been filed within one year of Awad's entry into the United States. Moreover, Awad was not eligible for an exception since the 11-month delay between the expiration of his lawful status and his filing exceeded the "reasonable period" provided for under 8 C.F.R. § 1208.4(a)(5)(iv). Additionally, the BIA upheld the IJ's denial of withholding of

---

[1] The IJ also found that the bakery incident had been motivated by Awad's poor baking skills, and not by Awad's religion.

removal and CAT protection.  It found that Awad had not established past persecution because the incidents he described did not rise to the level of persecution.  Also, Awad had not shown that it was more likely than not that he would be persecuted in Egypt on the basis of his religion, or that he would be tortured there.

As part of his appeal to the BIA, Awad submitted additional background evidence, which consisted of news stories and human rights group reports of various incidents where Egyptian Coptic Christians had suffered religiously motivated violence, forced conversions, rape, or other abuses.  The BIA considered these documents, but found that they were repetitive or cumulative of other background evidence before the IJ and would not change the result.  The BIA specifically noted that just because "conditions are difficult for millions of Coptic Christians in Egypt does not suffice to establish that [Awad] meets the legal requirements of our immigration laws."

## II.

For the issues over which we have jurisdiction, we review the BIA's factual findings under the "substantial evidence" standard.  Guzman v. INS, 327 F.3d 11, 15 (1st Cir. 2003).  Under this deferential standard, we must accept the agency's determination "unless any reasonable adjudicator would be compelled to conclude to the contrary."  Rodriguez-Ramirez v. Ashcroft, 398

F.3d 120, 123 (1st Cir. 2005) (quoting 8 U.S.C. § 1252(b)(4)(B)) (internal quotation marks omitted).

We have no jurisdiction to review the BIA's determination that Awad's asylum application was untimely. See 8 U.S.C. § 1158(a)(3); see also Sharari v. Gonzales, 407 F.3d 467, 473 (1st Cir. 2005) (noting that the statute's jurisdictional bar applies both to the BIA's determination that the petition was untimely, and to its decision that no exception applies). However, this jurisdictional bar does not apply to Awad's withholding of removal and CAT claims. See Sharari, 407 F.3d at 474 n.5; Njenga v. Ashcroft, 386 F.3d 335, 339-40 (1st Cir. 2004).

To qualify for withholding of removal, a petitioner must show that it is "more likely than not" that he would be subject to persecution on the basis of "race, religion, nationality, membership in a particular social group, or political opinion." Sharari, 407 F.3d at 474. The petitioner bears the burden of proof on this issue. 8 C.F.R. § 208.16(b). However, if the petitioner shows he has suffered past persecution, a presumption arises that he is likely to suffer future persecution. See id. § 208.16(b)(1). Demonstrating eligibility for withholding of removal requires a higher showing than demonstrating eligibility for asylum, as the latter requires only a showing that the petitioner has "a well-founded fear of persecution." Aguilar-Solis v. INS, 168 F.3d 565,

569 n.3 (1st Cir. 1999) (citing 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)).

Substantial evidence supports the BIA's determination that Awad's past experiences did not rise to the level of persecution. In defining persecution, we have explained that "persecution encompasses more than threats to life or freedom, but less than mere harassment or annoyance." Aquilar-Solis, 168 F.3d at 570 (internal citation omitted). Here, the incidents that Awad himself suffered essentially amount to being pushed around and threatened with injury once during his early youth, being slapped on two occasions while in the army in the early 1990s, witnessing several instances of unfair treatment against fellow Christians, and learning that a close friend's sister had been sexually assaulted and forced to convert.

We have upheld BIA findings of no persecution in cases with more -- or at least similarly -- oppressive facts. See, e.g., Topalli v. Gonzales, 417 F.3d 128, 132 (1st Cir. 2005) (petitioner was detained for less than 24 hours on a number of occasions and beaten by the police, though the beatings did not require medical attention); Nelson v. INS, 232 F.3d 258, 264 (1st Cir. 2000) (petitioner was held in solitary confinement for less than seventy-two hours on three different occasions, each accompanied by physical abuse, and was subject to "regular harassment in the form of periodic surveillance, threatening phone calls, occasional stops

and searches, and visits to her place of work"). On the facts of Awad's case, we cannot say that the mistreatment he suffered "extends so far beyond 'harassment and annoyance' so as to compel a reasonable factfinder to find past persecution." Nelson, 232 F.3d at 264.

Substantial evidence also supports the BIA's determination as to future persecution. At best, Awad's evidence showed that of the millions of Coptic Christians living in Egypt, some have been subject to persecution. That is not a showing that it is more likely than not that Awad will be subjected to religious persecution upon his return. Indeed, the State Department's Religious Freedom Report cuts against such a finding, noting that "for the most part, members of the non-Muslim minority worship without harassment." Additionally, the fact that Awad twice returned to Egypt after international travel, both times without incident, further supports the BIA's conclusion.

Awad nevertheless argues, citing language from this court's opinion in Davila-Bardales v. INS, 27 F.3d 1, 5-6, (1st Cir. 1994), that the BIA's decision in his case was arbitrary and inconsistent. In support of this, he points to a 1997 unpublished BIA decision granting asylum to an Egyptian Coptic Christian based on a well-founded fear of persecution. But as the BIA noted, there

-9-

is no inconsistency.  Unlike Awad's case, the 1997 case was decided under the more lenient asylum standard.[2]

Finally, substantial evidence supports the BIA's resolution of Awad's CAT claim.  To qualify for protection under the CAT, Awad must show that it is more likely than not that he would be tortured if he were removed to Egypt.  See Guzman, 327 F.3d at 16 (citing 8 C.F.R. § 208.16(c)(2)).  Under the federal regulations defining torture, this means Awad must show he will be "subject to 'severe pain or suffering, whether physical or mental' by or at 'the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" Id. at 17 (quoting 8 C.F.R. § 208.18(a)(1)).  Awad did not present any evidence that met this burden.

The petition for review is denied.

---

[2] Awad also tries to draw support from the Ninth Circuit's decision in Malty v. Ashcroft, 381 F.3d 942 (2004). But that case, which in any event was decided in a different procedural posture, was also an asylum case.