# United States Court of Appeals

## For the First Circuit

No. 06-1366

SUNOTO SUNOTO,

Petitioner,

v.

ALBERTO GONZALES,
Attorney General of the United States,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lipez, <u>Circuit Judge</u>,
Gibson* and Stahl, <u>Senior Circuit Judges</u>.

<u>William A. Hahn</u> and <u>Hahn & Matkov</u> on brief for petitioner.
<u>Hillel R. Smith</u>, Trial Attorney, Office of Immigration
Litigation, Civil Division, United States Department of Justice,
<u>Peter D. Keisler</u>, Assistant Attorney General, <u>Greg D. Mack</u>, Senior
Litigation Counsel, on brief for respondent.

September 27, 2007

_____

*Of the United States Court of Appeals for the Eighth Circuit,
sitting by designation.

**LIPEZ**, **Circuit Judge**.  Sunoto, a native and citizen of Indonesia, petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming the denial of his application for asylum, withholding of removal and voluntary departure.  An Immigration Judge ("IJ") found that Sunoto was not eligible for relief because, inter alia, he originally submitted a fraudulent application and failed to present credible testimony in support of his amended application.  The BIA adopted and affirmed the IJ's decision.  Sunoto challenges the IJ's decision on a host of grounds, most of which were not raised in his appeal to the BIA.  On those omitted issues, he unquestionably failed to exhaust his administrative remedies, see 8 U.S.C. § 1252(d)(1), leaving us without jurisdiction to review the agency's decision on those issues.  Berrio-Barrera v. Gonzales, 460 F.3d 163, 167 (1st Cir. 2006).  Two issues may be deemed preserved only if his BIA submissions are viewed generously.  Those issues are, in any event, unavailing, and we therefore deny the petition for review.

**I.**

Sunoto[1] lawfully entered the United States in July 1991 as a non-immigrant alien in transit and was authorized to remain in the country until the end of August that same year.  On June 3, 2002, he filed an asylum application with the former Immigration

---

[1] Although the official record refers to petitioner as "Sunoto Sunoto," he testified that his name is simply "Sunoto."

-2-

and Naturalization Service claiming that he was a Christian who feared Muslim extremists in his native Indonesia. Among other past episodes described in the application, he claimed that his father, a church deacon, had been shot and killed by the extremists. He reiterated this background in an interview with an asylum officer.

More than two years later, while removal proceedings were pending against him, Sunoto filed a new asylum application and admitted that his earlier application was almost entirely false. He explained at a hearing before an IJ that he had allowed an individual with whom he lived to fabricate the facts in the first application because Sunoto was newly arrived in the United States, he "did not know anything," and he "did not want to argue because [he] did not want to make that person angry." Sunoto admitted that, in fact, he had become a Christian only after arriving in the United States, and neither he nor any family members had experienced mistreatment in Indonesia. However, he repeated his fear of future persecution based on his newly adopted Christian beliefs.

In an oral ruling, the IJ denied Sunoto's application for asylum and withholding of removal, and also found that he was not entitled to protection under the Convention Against Torture.[2] The IJ found Sunoto statutorily ineligible for asylum on two grounds:

---

[2] Sunoto did not seek relief under the Convention, but the IJ nonetheless considered his eligibility under its provisions.

(1) his revised application was untimely because it was not filed within one year of his arrival in the United States, see 8 U.S.C. § 1158(a)(2)(B), and (2) Sunoto knowingly filed a frivolous application for asylum, and gave fraudulent and fabricated testimony before an asylum officer, disqualifying him from obtaining benefits under the Immigration and Naturalization Act, see 8 U.S.C. § 1158(d)(6). The IJ alternatively concluded that Sunoto had failed to present credible testimony in support of his application, finding Sunoto to be "evasive, nonresponsive, furtive, and a wholly incredible witness." In making the credibility finding, the IJ pointed to inconsistencies in Sunoto's testimony at the hearing, his admittedly fraudulent first application, the subsequent false testimony he gave to the asylum officer, and his explanation for his earlier conduct – which the IJ termed "disingenuous at best." The negative credibility finding also doomed Sunoto's request for withholding of removal. See Abdullah v. Gonzales, 461 F.3d 92, 97 (1st Cir. 2006) ("An alien who fails to satisfy the standard for asylum automatically fails to satisfy the more stringent standard for withholding of removal.").

In his notice of appeal to the BIA, which apparently was filed without the assistance of counsel, Sunoto complained that "[t]he judge was not fair enough to listen to my testimony" and asserted that "I told everything the truth, but the judge said I was lie." A subsequently filed "brief" consisted of a three-page

-4-

statement describing his conversion to Christianity, the absence of religious freedom in Indonesia, and his fear that he would be a target of persecution if he returned there. In reference to his first application, he explained: "I realized that my application for asylum was fraud. The reason I changed my affidavit on the hearing last year just because I couldn't lie to myself anymore. I already received the truth from God. I convinced myself always to tell the truth to everyone." Attached to his statement were copies of news reports about religious violence in Indonesia.

The BIA adopted and affirmed the IJ's decision in February 2006. It declined to decide whether Sunoto's second application was timely filed, but agreed with the IJ that he was in any event ineligible for asylum because he had filed a frivolous application. Although the Board disagreed with the IJ's finding of inconsistencies in Sunoto's testimony,[3] it agreed that he was not a credible witness based on the other reasons cited by the IJ and that he therefore failed to prove his claim for withholding of

---

[3] The testimony at issue concerned Sunoto's knowledge of the contents of his original asylum application. The IJ stated that Sunoto first testified that he understood the fabrications in that application, but changed his testimony on cross-examination to say that he was unfamiliar with the answers given on the form. The BIA noted that petitioner's original testimony concerned the substantive material in the application, but the cross-examination testimony followed questioning about his understanding of written warnings about frivolous applications. The BIA concluded that the latter testimony about his lack of understanding was "not clearly inconsistent with his prior testimony . . . that he knew the substance of the application."

removal.  The BIA also endorsed the IJ's rejection of voluntary departure.  It treated Sunoto's submission of new documents as a motion to remand, but concluded that, given the adverse credibility finding, he could not meet his "heavy burden" to prove a likely change in result if the proceedings were reopened.  See Abdullah, 461 F.3d at 100 (referring to the "heavy burden" faced by an alien seeking to reopen immigration proceedings).

In his petition for review to this court, Sunoto presents six issues: (1) the IJ erred as a matter of law in ruling that his fraudulent application permanently barred him from receiving any immigration benefits; (2) the IJ erroneously ruled that his amended asylum application was untimely; (3) the BIA erroneously failed to give full effect to its finding that the IJ improperly identified inconsistencies in his hearing testimony; (4) the IJ improperly used an irrebuttable presumption that he was incapable of telling the truth; (5) the IJ's "clear predisposition" to find that he was incapable of telling the truth denied him due process of law; and (6) the case must be remanded because the IJ did not rule on his amended application.

As revealed by our description of Sunoto's notice of appeal and supporting materials, none of these claims was explicitly presented to the BIA.  A petitioner who fails to present a claim to the BIA has failed to exhaust his administrative remedies on that issue, and we consequently lack jurisdiction to

-6-

review the claim.  Berrio-Barrera, 460 F.3d at 167; see also Olujoke v. Gonzales, 411 F.3d 16, 23 (1st Cir. 2005).

However, among the six asserted challenges in Sunoto's brief are two focusing on the IJ's credibility finding – the irrebuttable presumption and due process claims – that resemble his contentions to the BIA that the IJ was unfair in not listening to his testimony and called him "a lie."  Whether the similarity is enough to warrant our review is doubtful.  The exhaustion of remedies doctrine extends not only to claims omitted from an appeal to the BIA but also to claims that were "insufficiently developed before the BIA."  Silva v. Gonzales, 463 F.3d 68, 72 (1st Cir. 2006); Olujoke, 411 F.3d at 22-23.[4]  Nonetheless, preferring to apply this standard generously, we briefly consider his objections concerning the IJ's approach toward his truthfulness.

## II.

When the BIA adopts and affirms an IJ's decision, we review the IJ's decision "to the extent of the adoption, and the BIA's decision as to [any] additional ground." Berrio-Barrera, 460

---

[4] In Bencosme de Rodriquez v. Gonzales, 433 F.3d 163, 164 (1st Cir. 2005), we declined to review "the petitioner's claim that improper judicial conduct by the Immigration Judge violated her due process rights because the petitioner failed to raise this claim in her appeal to the BIA and therefore failed to exhaust her administrative remedies."  Although some constitutional claims are exempt from the exhaustion requirement because the BIA lacks authority to address them, that exception does not apply to a claim of "bias and misconduct by [the] Immigration Judge."  Id. at 165 (citing Sayyah v. Farquharson, 382 F.3d 20, 27 (1st Cir. 2004)).

F.3d at 167; see also Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004) ("[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA."). In conducting our review, we use the deferential substantial evidence standard for factual findings and credibility determinations. Silva, 463 F.3d at 72. That approach requires us to "uphold the BIA's decision 'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. (quoting 8 U.S.C. § 1252(b)(4)(B)).

At bottom, Sunoto's due process and irrebuttable presumption claims are both assertions that the IJ unfairly relied on the fraudulent application in making the adverse credibility finding, and lacked a sufficient basis in the record for that finding. The BIA determined that the IJ erred with respect to one rationale – that Sunoto had testified inconsistently about his knowledge of the contents of his fraudulent application – but held that the finding was sufficiently supported by other factors: "the respondent's fraudulent filing and testimony before the asylum office, his demeanor, [and] his implausible explanation for why he pursued a fraudulent claim . . . ."

Sunoto does not challenge the relevance and validity of these other reasons; indeed, it cannot be debated that his earlier fabrications carry some weight. However, he claims that the IJ

began the credibility assessment with an unfair emphasis on his past conduct and then unfairly bolstered the inference of untruthfulness by relying heavily on the inconsistency that the BIA rejected. Sunoto cites several comments made by the IJ, including that "[t]his respondent is incapable of telling the truth," and that "this Court cannot find anything that comes out of the respondent's mouth or anything that he submits to this Court in writing to be credible." Sunoto argues that the predisposition reflected in this "strong language" is "particularly objectionable because it is based on a view of Sunoto's testimony that the BIA has found unwarranted." He further asserts that these statements suggest a predisposition that diminishes the force of the other factors cited by the IJ and prevented him from having a fair hearing.[5]

While the IJ's credibility determination undoubtedly was influenced to some extent by his erroneous finding of an inconsistency, he cited – as noted above – multiple other reasons

---

[5] Sunoto also attempted to buttress his due process claim by pointing to the immigration judge's statement that he (the judge) was "uncertain of the respondent's identity." Sunoto notes that no questions ever were raised concerning his identity, and the IJ's comment was therefore further indication of an unfair predisposition toward petitioner. We can agree that the IJ's reference to identity was unnecessary and without basis, but, in context, it is more reasonably understood as a general comment on Sunoto's credibility – based on the other factors noted above – than a challenge to Sunoto's identity. There is no indication that identity played a consequential role in the IJ's decision or any role in the BIA's assessment of the IJ's ruling.

for his conclusion and observed that "[a]ll of these actions go to the heart of the matter before this Court today, that is, is the respondent a credible witness." For example, in rejecting Sunoto's explanation that he filed the fraudulent application because he feared confronting his friend, the IJ observed that if he were "afraid to contradict his roommate and change his asylum application because he thought he would be kicked out of his house, [he] certainly would have refused to go under oath and perjure himself in such grave and great detail before the United States asylum officer." The IJ thus found that Sunoto was "a full, willing participant in this fraud on the United States."

We therefore are persuaded that the IJ did not, as Sunoto suggests, pre-judge his credibility. Rather, the judge deemed his new story unbelievable and, among other reasons, factored in his assessment of demeanor. Moreover, the BIA reviewed the record with care, discounting the IJ's subsidiary finding of inconsistency.[6] On this record, we cannot say that the IJ's credibility finding was unfairly derived or that the nature of the proceedings compelled the BIA to reject the IJ's credibility determination.[7]

The petition for review is denied.

---

[6] The BIA also pointed out a legal error in the IJ's decision, noting that submission of a frivolous application forecloses asylum but does not – as the IJ stated – also preclude withholding of removal. See 8 C.F.R. § 1208.20.

[7] While we do not reach Sunoto's other claims, we note that the credibility finding renders them moot.

-10-