# United States Court of Appeals

## For the First Circuit

No. 07-2819

RAOUF SOLIMAN ABDELMALEK, MOFIDA SAMWAIL SALIB,
PETER RAOUF SOLIMAN

Petitioners,

v.

MICHAEL B. MUKASEY,
ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Selya, and Stahl,
<u>Circuit Judges</u>.

Raja H. Wakim on brief for petitioners.
Jeffrey S. Bucholtz, Acting Assistant Attorney General, James
A. Hunolt, Senior Litigation Counsel, and Vanessa O. Lefort,
Attorney, Office of Immigration Litigation, on brief for
respondent.

August 25, 2008

**STAHL**, **Circuit Judge**.  The Board of Immigration Appeals (BIA) adopted and affirmed an Immigration Judge's (IJ's) decision denying Raouf Soliman Abdelmalek's[1] claims for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  Abdelmalek, a native and citizen of Egypt, now petitions this court for a review of the BIA's denial of his claims.  We deny the petition for review.

## I.  BACKGROUND

Abdelmalek and his family are Coptic Christians who hail from Alexandria, Egypt.  Abdelmalek is a medical doctor with a specialization in ear, nose, and throat care.  He graduated from a government-run medical school in 1975 and had worked in Egypt for both a government hospital and a private, Christian hospital.  Although Abdelmalek did allude to being "mistreated" during medical school, the core problems that seem to motivate this application for asylum are of a more recent vintage.  Abdelmalek's wife owned an apartment building, which collapsed in June 2000, killing a number of Muslim tenants.  At the time of the collapse, both Abdelmalek and his wife were out of the country.[2]  When Abdelmalek

---

[1]Abdelmalek's wife, Mofida Samwail Salib, and his son, Peter Raouf Soliman, both also natives and citizens of Egypt, are derivative applicants for asylum, withholding of removal, and protection under the CAT.  Petitioner claims that his other child, a daughter, was targeted by Muslim extremists in 1998, fled to the United States, and was subsequently granted asylum.

[2]Abdelmalek's wife and son left for the United States shortly before the building collapsed and have remained in the U.S. ever

returned to work in Egypt in January 2002, he claimed that he was harassed a number of times by Muslims who apparently blamed Abdelmalek's family for the disaster. According to Abdelmalek, he was visited at work on about ten occasions by Muslim individuals who threatened his family, pressured him to convert to Islam, and verbally abused and, on at least one occasion, pushed him. Abelmalek claimed that he contacted the police for assistance but they were not responsive.[3]

As a result of this harassment, Abdelmalek maintains that he fled Egypt, fearing for his safety. He entered the United States legally on or about May 30, 2002, as a non-immigrant visitor with authorization to remain until November 29, 2002. On May 16, 2003, Abdelmalek applied for asylum and withholding of removal. The Department of Homeland Security subsequently initiated removal proceedings against Abdelmalek, Mrs. Salib, and their son. At

___

since. Abdelmalek himself visited the United States twice during this time but returned to Egypt after each visit; he was admitted on a B-2 (tourist) visa on October 1, 2000 and again on May 29, 2001. Mrs. Salib filed an affirmative application for asylum and withholding of removal on June 7, 2001, on behalf of herself and her son, Peter. On July 7, 2004, an immigration judge granted Mrs. Salib's motion to consolidate her case with her husband's case.

[3]There is some discrepancy in the record regarding whether Abdelmalek contacted the police. When testifying, Abdelmalek did not initially mention that he had contacted the police, and only volunteered the information that he had contacted the police after the first incident upon questioning by the IJ. There is also some indication that Abdelmalek initially told the asylum officer that he had not contacted the police because they would be of no assistance to a Christian, although in his oral testimony Abdelmalek maintained that was a misunderstanding.

hearings before an immigration judge, all three conceded removability but maintained that they were entitled to relief in the form of asylum, withholding of removal, and protection under the CAT.

At the merits hearing, at which Abdelmalek testified but his wife did not, the IJ noted that Abdelmalek's testimony lacked corroborative detail and was somewhat inconsistent. Based on these factors, the IJ stated that she was "unable to make a positive credibility finding in this case." Stating that even if she were to accept Abdelmalek's testimony as true, the IJ determined that the petitioner failed to establish either past persecution or a well-founded fear of future persecution. In support of this determination, the IJ pointed to the evidence that Abdelmalek came from a privileged background in Egypt, graduated from a government-run medical school, and had a successful career as a medical doctor, including working for a government hospital. Additionally, Abdelmalek had traveled to the United States on previous occasions and had returned to Egypt, which the IJ reasoned is hardly the conduct of a man who fears persecution upon his return. Finally, the IJ noted that Abdelmalek had failed to prove that he could not relocate elsewhere in Egypt to avoid the alleged persecution.

The BIA adopted and affirmed the IJ's decision. The BIA agreed with the IJ's adverse credibility determination, calling Abdelmalek's testimony "inconsistent and vague." Even if

Abdelmalek's testimony were considered credible, the BIA agreed with the IJ's finding that Abdelmalek failed to proffer sufficient evidence of past persecution or a well-founded fear of future persecution.

## II.  ANALYSIS

We review a BIA decision using a "substantial evidence" standard, affirming the decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Attia v. Gonzales, 477 F.3d 21, 23 (1st Cir. 2007) (per curiam) (internal citations omitted).  Where, as here, the Board adopts the immigration judge's ruling but also engages in discussion of its own, we review both decisions.  Lin v. Mukasey, No. 07-2301, 2008 WL 1994969, at *3 (1st. Cir. May 8, 2008).

As an initial matter, we turn to the IJ's determination that Abdelmalek was not credible. This finding is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B); see also Lopez de Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007).  Although that standard is deferential, the IJ must provide a "specific, cogent, and supportable explanation for rejecting an alien's testimony."  Teng v. Mukasey, 516 F.3d 12, 16 (1st Cir. 2008)(internal citations omitted).  Here, the IJ delivered a lengthy oral decision, detailing her doubts as to Abdelmalek's credibility and veracity with some care.  The IJ pointed to the

-5-

fact that Abdelmalek's account of being threatened at work was very light on corroborative detail, as was his account of reporting the incidents to the police and the police reaction. The IJ also highlighted several discrepancies within Abdelmalek's testimony, particularly with regard to whether or not he reported the purported harassment at work to the police. Additionally, Abdelmalek was not able to offer any documentary evidence to corroborate his vague oral testimony about the events that he claimed amounted to persecution, and his wife did not testify to buttress his account. The IJ also implied that Abdelmalek may have other reasons for wanting to remain in the United States, pointing to some confusion in the record over whether his son is in school here, and whether his family is under investigation in Egypt because of the building collapse. Overall, the record hardly compels a favorable credibility determination.

Even if Abdelmalek's testimony were deemed credible, however, the IJ's conclusion that Abdelmalek failed to demonstrate past persecution or a well-founded fear of future persecution is supported by substantial evidence. In order to be entitled to asylum, a petitioner must demonstrate that he has been subjected to past persecution or that he harbors a well-founded fear of future persecution on account of his race, religion, nationality, political opinion, or membership in a particular social group. Carcamo-Recinos v. Ashcroft, 389 F.3d 253, 257 (1st Cir. 2004). To

establish a well-founded fear of future persecution, the petitioner must show that his fear is both genuine and objectively reasonable. Id. "To qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering." Jorqji v. Mukasey, 514 F.3d 53, 57 (1st Cir. 2008)(internal citations omitted). Additionally, a petitioner must show that the state participated in or at least acquiesced in the alleged acts of persecution. Id.

It is never a pleasant task to attempt to quantify an individual's suffering and measure it against the suffering of others, but it must be remarked that this court has recently denied petitions for review filed by other Egyptian Copts who suffered mistreatment at least equal to, if not greater than, that allegedly suffered by Abdelmalek. See generally Malek v. Mukasey, No. 07-1851, 2008 WL 1704157 (1st Cir. Apr. 14, 2008); Hana v. Gonzales, 503 F.3d 39 (1st Cir. 2007); Attia, 477 F.3d at 24. A series of somewhat vague verbal threats, seemingly unaccompanied by any significant physical abuse and any government involvement or acquiescence, simply does not rise to the level of persecution in these circumstances. See Attia, 477 F.3d at 24 (two beatings over the course of nine years and general climate of discrimination does not constitute past persecution); Awad v. Gonzales, 463 F.3d 73, 75 (1st Cir. 2006)(childhood bullying, being slapped by an officer during military service, seeing discrimination against Christians,

and learning a friend's sister had been sexually assaulted by Muslims and forced to convert to Islam does not constitute past persecution). We do not lend particular weight to the IJ's observation that Abdelmalek came from a "privileged background" and was "financially extremely solvent," as the very financial success of a minority group may be an additional motivator in targeting the group for persecution. Nevertheless, it is worth noting that Abdelmalek was able to graduate from a government-run medical school and work at a government-run hospital, undercutting his argument that the government is unwilling to deploy its resources to assist Christians.

Furthermore, Abdelmalek's claimed fear of future persecution "is significantly undermined by the fact that he willingly returned to Egypt after his earlier trip to the United States." Attia, 477 F.3d at 24; see also Awad, 463 F.3d at 76. And Abdelmalek failed to prove that he could not avoid any potential future persecution by simply relocating elsewhere in Egypt, where the locals would know nothing about the collapsed building. See Tendean v. Gonzales, 503 F.3d 8, 11 (1st Cir. 2007)(explaining that "the possibility of internal relocation negates any presumption of eligibility . . . based on past persecution").

The government maintains that this court lacks jurisdiction to review Abdelmalek's claims for withholding of

removal and protection under the CAT, because he did not challenge the denial of those claims in his appeal to the BIA. See Sunoto v. Gonzales, 504 F.3d 56, 59 (1st Cir. 2007)("A petitioner who fails to present a claim to the BIA has failed to exhaust his administrative remedies on that issue, and we consequently lack jurisdiction to review the claim."). It is true that Abdelmalek's BIA appeal brief did not mention his withholding of removal or CAT claims; however, the BIA did review those portions of the IJ's decision as well, and Abdelmalek does raise those issues in his petition for judicial review before this court. Nevertheless, even if we were to apply the exhaustion of remedies standard generously, see id., and review the claims, we would deny them on the merits. Because Abdelmalek has failed to establish that he is entitled to asylum, he necessarily fails to meet the higher standard for withholding of removal. Segran v. Mukasey, 511 F.3d 1, 7 (1st Cir. 2007). Regarding Abdelmalek's CAT claim, we find nothing in the record that would compel the conclusion that it is more likely than not that Abdelmalek would be tortured if he were to return to Egypt. See id.

### III. CONCLUSION

For the foregoing reasons, Abdelmalek's petition for review is DENIED.