**Amenul HOQUE; Rojina Akter, aka Rojina Hoque, aka Misess Rojina Akter, Petitioners**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 09–1419.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) March 17, 2010.

Filed: March 19, 2010.

Salim Sheikh, Esq., New York, NY, for Petitioners.

Aimee J. Frederickson, Marion E. Guyton, Eric H. Holder, Jr., Thomas W. Hussey, David H. Wetmore, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before: RENDELL, FISHER and GARTH, Circuit Judges.

OPINION

PER CURIAM.

Amenul Hoque (the lead respondent) and his wife, Rojina Akter (the derivative respondent), petition for review of the removal order issued by the Board of Immigration Appeals ("BIA") affirming the denial of asylum and other relief. For the reasons set forth below, we will deny the petition.

Hoque and Akter are natives and citizens of Bangladesh who entered the United States on February 6, 2004, on a B–2 visa that expired on August 4, 2005. In 2006, the Department of Homeland Security ("DHS") issued a notice to appear charging that Hoque and Akter were removable because they overstayed their visas. Through counsel, they conceded the charges of removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

At the removal hearing held in February 2007, Hoque testified that he became an active member of, and worker for, the Jatiya Party in 1998. His elder brother, Abdul, was a longstanding member of the Bangladesh National Party ("BNP"). Both parties opposed the Awami League in the late 1990's and early 2000's. Hoque testified that, in 1999, the Awami League-led government falsely accused Abdul of wrongdoing, arrested him, and held him in jail for three months. Hoque and his family reported his brother's incident to the police, who did nothing. Hoque also testified that Awami League members had been bothering him for a long time. In the six to seven months leading up to his departure from Bangladesh in 2001, Awami League members came to Hoque's house repeatedly, threatening that he would suffer the same fate as Abdul if he did not join them. He reported the threats to the members of the Jatiya Party and to police in December 2000.[1]

---

1. In the argument section of his brief, Hoque refers for the first time to "evidence of the attempted shooting of the Petitioner," directing our attention to page 192 of the Administrative Record. (Pet'r Br. at 14.) Hoque also argued that he had "testified that he was beaten at the hands of Awami League members, and they mistreated, mentally tortured and threatened him." (*Id.* at 19.) Having reviewed the entire the administrative record,

In April 2001, in order to avoid problems with the Awami League, Hoque left his wife and two children behind in Bangladesh and headed for Botswana on a residence and work permit. His wife and children joined him about five months later. Hoque managed a clothing business in Botswana, which he operated until 2004. He decided to leave Botswana after the store was repeatedly vandalized. He said that he did not apply for asylum while he was in Botswana because he had permission to live there. In February 2004, Hoque and his family left on B–2 visas for the United States. He did not apply for asylum right away because he did not know how to read or write English and did not know that he could apply for asylum.

Hoque returned once to Bangladesh to visit his ailing mother during Ramadan in 2002 (when he was living in Botswana). His mother had moved to Noakhali, where Hoque was not known. He experienced no problems during his month-long stay in Noakhali because he was not involved in political activity there. He feared that, if he returned, he would be killed based on current news reports of instability in Bangladesh.

The Immigration Judge ("IJ") denied asylum, withholding of removal, and relief under the CAT. The IJ questioned the sufficiency of Hoque's testimony concerning the reasons for Abdul's imprisonment,

noted the lack of reasonably accessible corroborating evidence concerning the reasons for Abdul's imprisonment, and observed that a letter from the Jatiya Party submitted by Hoque in support of his claim of verbal threats failed to mention his complaint of such threats to them. The IJ ultimately concluded, however, that Hoque failed to demonstrate "past persecution" on account of his political opinion, finding that the worst treatment that Hoque received was "a threat or two . . . . [a]nd when he returned he wasn't harmed." (J.A. at 86.) The IJ also determined that Hoque failed to demonstrate a well-founded fear of future persecution because his brother and mother lived in Bangladesh and were unharmed and because Hoque could safely relocate to his family's home in Noakhali.[2]

The Board of Immigration Appeals ("BIA") dismissed Hoque's appeal. Assuming the credibility of Hoque's testimony, the BIA held that evidence of verbal threats by members of the Awami League did not amount to "past persecution" for asylum purposes. The BIA also held that Hoque failed to show a well-founded fear of future persecution, noting that his return to a different area of Bangladesh without incident undermined his claim of a subjective fear of persecution in the entire country and supported the conclusion that relocation to another area was not unrea-

we find absolutely no evidentiary support for Hoque's assertions that he was the target of an attempted shooting, or that he was beaten, mistreated or mentally tortured by members of the Awami League. Hoque's testimony attests only to verbal threats made to him during a six to seven month period in 2000 and early 2001, which he said he had reported to the Jatiya Party. (J.A. at 140, 146, & 155–56.) He denied being arrested. (*Id.* at 153.) Pages 192 through 194 of the administrative record are the State Department's travel advisory for Bangladesh dated January 29, 2007, alerting travelers to the Caretaker

Government's declaration of a state of emergency. The advisory makes no mention of an attempted shooting involving Hoque.

2. Relying on the 2006 State Department Country Report on Bangladesh, the IJ also found that Hoque failed to establish a well-founded fear of future persecution because the Awami League was no longer in power. The BIA, however, did not rely on a change in country conditions in determining that Hoque failed to show a well-founded fear of future persecution.

sonable. The BIA agreed with the IJ that Hoque could not show an objective fear of future persecution because his mother and elder brother remained in Bangladesh without harm and that Hoque did not otherwise demonstrate sufficient evidence to establish a well-founded fear. The BIA thus determined that Hoque failed to satisfy the burden of proof required for asylum and the higher standard of proof required for withholding of removal. The BIA also determined that Hoque had not shown a clear probability of torture at the instigation of, or with the consent or acquiescence of, government officials. This timely petition for review followed.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252. *See Briseno–Flores v. Att'y Gen.*, 492 F.3d 226, 228 (3d Cir.2007). Where, as here, the BIA issues a decision on the merits, we review the BIA's, not the IJ's decision.[3] *See Sioe Tjen Wong v. Att'y Gen.*, 539 F.3d 225, 230 (3d Cir.2008) ("[W]here the BIA renders its own decision and does not *merely* adopt the opinion of the IJ, we review the BIA's decision, not that of the IJ.") (emphasis added). The BIA reviews the IJ's factual determinations only to determine whether they are clearly erroneous. 8 C.F.R. § 1003.1(d)(3)(i). We must uphold the BIA's findings, including its determination whether an alien was subject to persecution or has a well-founded fear of persecution, if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (quotation omitted). Indeed, we may not reject these findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Kibinda v. Att'y Gen.*, 477 F.3d 113, 119 (3d Cir.2007).

Hoque asserts that verbal threats are sufficient to show that he was persecuted. We disagree. "[P]ersecution connotes extreme behavior, including threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Ahmed v. Ashcroft*, 341 F.3d 214, 217 (3d Cir.2003) (internal quotation marks omitted). Persecution "does not include all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Id.* Here, the verbal threats that Hoque received, although troubling, do not amount to "persecution" under the INA. *Abdelmalek v. Mukasey*, 540 F.3d 19, 23 (1st Cir. 2008); *Djonda v. Att'y Gen.*, 514 F.3d 1168, 1174 (11th Cir.2008). Thus, we conclude that substantial evidence supports the BIA's holding that Hoque failed to establish past persecution. Substantial evidence also supports the BIA's determination that Hoque failed to demonstrate a well-founded fear of future harm. Hoque was safe in Noakhali for the month that he stayed there and there is no record evidence that his brother, Abdul, who lived in Noakhali, experienced any politically motivated harm there or elsewhere in Bangladesh for the time period from 1999 through 2007.[4] 8 C.F.R. § 1208.13(b)(2)(ii).

---

3. Because our review is limited to the BIA's decision, and because the BIA assumed Hoque's credibility, we need not address Hoque's argument in his brief that the IJ erred in making an adverse credibility determination.

4. The BIA apparently viewed the evidence of the 1999 arrest and imprisonment of Hoque's brother, Abdul, as insufficient to establish a well-founded fear of future persecution. (*See* J.A. at 3.) We agree and note that there is no record evidence that the perpetrators took any action against Abdul after his imprisonment in 1999.

Because Hoque failed to satisfy the lower burden of proof required for asylum, he is necessarily ineligible for withholding of removal. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 430–32, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). Moreover, the BIA determined that Hoque did not meet his burden of establishing that it is more likely than not that he will be tortured upon his return to Bangladesh, 8 C.F.R. §§ 1208.16, 1208.18, and we conclude that the record does not compel a different conclusion.

Accordingly, we will deny the petition for review.