NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3879
_____

MARINA SADULAEVA,
a/k/a Marina Movsarovna Sadulaeva,
                                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                    Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A93 409 850)
Immigration Judge:  Honorable Annie S. Garcy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 4, 2011

Before:  BARRY, HARDIMAN and STAPLETON, Circuit Judges

(Opinion filed January 13, 2011)
_____

OPINION
_____

PER CURIAM

        Marina Sadulaeva, a citizen of Kyrgyzstan (officially the Kyrgyz Republic), was

admitted to the United States in February 2004 with authorization to remain for six

months.  She overstayed her period of admission and, in 2007, was charged with removability pursuant to Immigration and Nationality Act ("INA") § 237(a)(1)(B) [8 U.S.C. § 1227(a)(1)(B)].  Sadulaeva conceded that she was removable as an overstay, but sought asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").

Sadulaeva testified that she was persecuted on account of her mixed ethnicity; her father is Chechnyan and her mother is Russian.  Sadulaeva claimed that, as a result, her entry into medical school was delayed, she did not regularly receive financial aid, she had limited access to library books, she was denied a dorm room, and she had difficulty finding a position as a medical resident upon graduation.  Sadulaeva also claimed that she was persecuted on account of her religion; she is an evangelical Christian.  Although she was able to worship in other parishioners' homes, her neighbors became irritated when she hosted prayer groups at her house.  In the summer of 2002, a rock was thrown through her window with a note calling her "Christian dirt" and telling her to get out of Kyrgyzstan.  In addition, someone tampered with her apartment keyhole, left a burned copy of a Christian magazine under her door, and urinated on her doormat.  Later that year, Sadulaeva was assaulted on the street.  One of the assailants rubbed her chest and pushed her.  During the attack, she was warned, "If you won't stop delivering your witchcraft religion, next time we will have [a] different . . . talk with you."  Sadulaeva did not report the incident to the police because she believed they would not help her and because she did not want her work colleagues to learn about the incident.  In May 2003,

2

Sadulaeva was participating in an evangelical music concert when young ethnic Kyrgyz arrived, broke the performers' instruments, verbally assaulted them, and punched and kicked Sadulaeva. The most serious attack occurred in July 2003, when Sadulaeva and other Christians had gathered to conduct baptisms. Kyrgyz assailants grabbed Sadulaeva's face, tore her Bible, and hit her back. She claimed that she could not walk for one month, but there is no indication that she sought medical treatment. The police refused to investigate. Since arriving in the United States, Sadulaeva has learned of incidents in Kyrgyzstan where a Baptist Church was set on fire, where religious literature was burned, and where missionaries were prevented from operating freely.

The Immigration Judge ("IJ") denied Sadulaeva's requests for relief, concluding that the incidents she described did not rise to the level of persecution and that evidence of current country conditions undermined her claimed fear of future persecution.[1] The Board of Immigration Appeals ("BIA") agreed that Sadulaeva's experiences were not sufficiently severe to constitute past persecution. The Board also concluded that she had not established an objectively reasonable fear of future persecution, in part because the State Department's International Religious Freedom Report indicated that Sadulaeva's church is the largest Protestant church in Kyrgyzstan and that religious groups operate with little interference from the government or each other.

---

[1] Although Sadulaeva's asylum application was filed more than one year after her arrival in the United States, see INA § 208(a)(2)(B), the IJ concluded that it was timely pursuant to a statutory exemption for changed country conditions. See INA § 208(a)(2)(D).

Sadulaeva filed a timely petition for review.[2]  We have jurisdiction pursuant to INA § 242 [8 U.S.C. § 1252].  Because the BIA adopted the findings of the IJ and also commented on the sufficiency of the IJ's determinations, this Court will review the decisions of both the BIA and the IJ.  See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004).  Review of these decisions is for substantial evidence, considering whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Balasubramanrim v. INS, 143 F.3d 157, 161 (3d Cir. 1998) (citations omitted).  The decisions must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it."  Zubeda v. Ashcroft, 333 F. 3d 463, 471 (3d Cir. 2003) (quoting Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001)).

An applicant for asylum has the burden of establishing that she is unable or unwilling to return to her home country "because of [past] persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]"  INA § 101(a)(42)(A).  Persecution "connotes extreme behavior, including threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom."  Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (internal quotations and citation omitted).  Mere threats generally do not amount to persecution unless "they are of a highly imminent and menacing nature."  Li v. Att'y Gen., 400 F.3d 157, 164 (3d Cir. 2005).

_____

[2] Sadulaeva originally filed the petition for review in the Court of Appeals for the Second Circuit.  By order dated September 29, 2009, the Second Circuit transferred the petition

4

On appeal to the BIA, Sadulaeva conceded that none of the incidents described above individually constitute persecution. The BIA properly explained that, even considered cumulatively, Sadulaeva's experiences represent merely the kind of generalized criminal conduct, harassment, and intimidation that does not rise to the level of persecution. See Wong v. Att'y Gen., 539 F.3d 225, 232 (3d Cir. 2008); Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005). Notably, the threat to "have [a] different . . . talk with you," issued after Sadulaeva was groped and pushed, was not especially menacing. See Chavarria v. Gonzales, 446 F.3d 508, 518 (3d Cir. 2006). None of the injuries she received were particularly severe. See Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005). Furthermore, she ultimately was able to overcome her difficulties in medical school and graduate without harm. Cf. Abdelmalek v. Mukasey, 540 F.3d 19, 23-24 (1st Cir. 2008) (concluding that ability to graduate from medical school undermined claim of persecution on account of religion).

Sadulaeva also failed to show a well-founded fear of future persecution. In support of her claim, Sadulaeva pointed to three news articles and the 2007 State Department Religious Freedom Report. The articles, from 2006 and 2007, reference an arson attack on a Baptist Church, quote a pastor who asserted that intolerance of Christians in south Kyrgyzstan is growing, and report the murder of an ethnic Kyrgyz convert to Christianity. The State Department Report indicates that Kyrgyzstan's largest Protestant Church had complained of government attempts to hamper its activities in the

for review to this Court.

past.  We conclude that this evidence does not compel the conclusion that Sadulaeva faces an individualized risk of persecution or that there is a pattern or practice of persecution in Kyrgyzstan on account of ethnicity or religion.  <u>Lie</u>, 396 F.3d at 537 (holding that, in order to constitute a "pattern or practice," the persecution of a group must be "systemic, pervasive, or organized.").

For the above reasons, we will deny the petition for review.