**Syeda IFFAT, Petitioner,**

v.

**Alberto R. GONZALES,\* Attorney General, Respondent.**

**No. 03–71818.**

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 15, 2005.\*\*

Decided April 14, 2005.

---

\* Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

\*\* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Sabbir Ahmed, Esq., Law Offices, Los Angeles, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. Lefevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, OIL, Sergio A. O'Cadiz, DOJ—U.S. Department of Justice, Washington, DC, for Respondent.

Before: KLEINFELD, WARDLAW, and BERZON, Circuit Judges.

MEMORANDUM ***

Syeda Iffat, a native and citizen of Pakistan, petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of her appeal from an Immigration Judge's ("IJ") denial of her application for asylum and withholding of deportation. We grant the petition for review and remand for further proceedings.

As the BIA noted, the IJ "failed to make a specific adverse credibility finding," so Iffat's testimony is accepted as true. *See Mamouzian v. Ashcroft*, 390 F.3d 1129, 1133 (9th Cir.2004). The BIA's decision rested on a failure by Iffat to meet her "burden of proof of establishing past per-

secution or a well-founded fear of persecution." We review this determination for substantial evidence. *See Lata v. INS*, 204 F.3d 1241, 1244–45 (9th Cir.2000).

Contrary to the BIA's determination, the record compels the conclusion that Iffat did provide a "sufficiently descriptive" account of her activities with the Mohajir Quami Movement ("MQM"), a topic about which she was never asked to elaborate. *See Akinmade v. INS*, 196 F.3d 951, 957 (9th Cir.1999) ("The IJ's concern for more specific information does not constitute a valid ground for denying Akinmade's claim, especially when Akinmade was not given notice that he should provide such information, nor asked at the hearing to do so, either by the IJ or by counsel for the INS."). We conclude that there was no insufficiency of detail in Iffat's description of her connection with the MQM.

Moreover, that Iffat did not describe "details about" MQM meetings in her home is not pertinent to her burden of proof if one credits her testimony—as the BIA necessarily was required to do—that the meetings were indeed held. Nowhere in the record is it stated that Iffat was even present at these gatherings. In addition, the BIA was simply incorrect in stating that "[t]he respondent did not mention the use of her home as a meeting location for the group until she was questioned about the motive behind the burning of her house." Iffat volunteered, on the fifth page of her testimony, *before* any mention of the arson, that "I also made my house available for them to have meetings."

■ The BIA also faulted Iffat for failing to provide evidence of her membership in the MQM, because she *was* able to submit a letter acknowledging a donation to the group. This conclusion was errone-

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

ous. *See Gui v. INS*, 280 F.3d 1217, 1227 (9th Cir.2002) ("Where, as here, a petitioner provides some corroborative evidence to strengthen his case, his failure to produce still more supporting evidence should not be held against him."). Indeed, given the BIA's acceptance of Iffat's testimony as credible, the Board erred by requiring her to produce any corroborating evidence. "Once an applicant's testimony is deemed credible ... no further corroboration is required to establish the facts to which the applicant testified." *Karouni v. Gonzales*, 399 F.3d 1163, 1174 (9th Cir.2005). In this case, as in *Velarde v. INS*, 140 F.3d 1305, 1310 (9th Cir.1998), the BIA improperly "discounted the weight of [Iffat's] uncontroverted testimony (despite finding her credible) due to a lack of 'corroboration.'"

■ Contrary to the BIA's decision, the record compels the conclusion that Iffat met her burden of proof and established past persecution on account of political opinion. Iffat testified that a series of persecutory incidents occurred; "while a single incident ... may not rise to the level of persecution, the cumulative effect of several incidents may constitute persecution." *Surita v. INS*, 95 F.3d 814, 819 (9th Cir.1996). We assume that Iffat's husband's death was not adequately shown to be a political killing. Even so, the very specific death threats Iffat recounted, combined with the arson of her home and the attempted abduction of her daughter, constitute past persecution. *See Mashiri v. Ashcroft*, 383 F.3d 1112, 1119 (9th Cir. 2004) (petitioner "proved past persecution ... with her credible account of a death threat, violence against family members, vandalism, economic harm and emotional trauma"); *see also Ndom v. Ashcroft*, 384 F.3d 743, 751–52 (9th Cir.2004) ("Credible death threats are particularly compelling in establishing persecution when combined with other forms of mistreatment."). The

BIA did not mention the killing of Iffat's relative, Selman Usami, who worked with her in the MQM, or the attempted abduction of her daughter. These incidents provide strong supporting evidence of past persecution. *See Baballah v. Ashcroft*, 367 F.3d 1067, 1074 (9th Cir.2004) ("The treatment of Baballah's brother demonstrated that these threats were not idle. Violence directed against an applicant's family members provides support for a claim of persecution...."). The death threats, arson, and attempted kidnaping of Iffat's daughter satisfy our definition of persecution as "the infliction of suffering or harm ... in a way regarded as offensive." *See Desir v. Ilchert*, 840 F.2d 723, 727 (9th Cir.1988) (internal quotation marks and citation omitted).

■ We also hold that the record compels the conclusion that Iffat's past persecution occurred on account of her political opinion. Although some of the pertinent incidents "are only circumstantially tied to her political opinions, [these] events, viewed in their entirety, lead to the conclusion that their occurrence can not be coincidental." *Popova v. INS*, 273 F.3d 1251, 1258–59 (9th Cir.2001). Moreover, as a result of the explicit linkages made in the threatening telephone calls to Iffat between her political views and threats of persecution that were subsequently fulfilled, "there appears to be no other logical reason for the persecution at issue." *Rios v. Ashcroft*, 287 F.3d 895, 900 (9th Cir. 2002) (internal quotation marks and citation omitted). Iffat provided sufficiently "compelling circumstantial evidence" to establish a nexus between the persecution and her political opinion. *See Gafoor v. INS*, 231 F.3d 645, 650 (9th Cir.2000).

Iffat's inability to interest the police in her complaints demonstrates that the government was "unable or unwilling to control" Iffat's non-governmental persecutors,

a requirement for asylum eligibility. *See Sangha v. INS,* 103 F.3d 1482, 1487 (9th Cir.1997). We reject the government's contrary contention, which was not presented to the agency, that despite Iffat's testimony "the fact that the police took a report regarding the crimes indicates their willingness to investigate the claimed attacks."

As the record compels the conclusion that Iffat demonstrated past persecution on account of political opinion, she is entitled to a presumption of a well-founded fear of persecution. *See Korablina v. INS,* 158 F.3d 1038, 1043 (9th Cir.1998); 8 C.F.R. § 208.16(b)(1)(i). The government made no arguments to the IJ or the BIA to rebut this presumption, and presented no documentary evidence for that purpose. "In these circumstances, to provide the INS with another opportunity to present evidence ... when it twice had the chance, but failed to do so, would be exceptionally unfair." *Baballah,* 367 F.3d at 1078 n. 11. We therefore conclude that Iffat is eligible for asylum. *See id.* (citing *INS v. Ventura,* 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam)). Because the decision to grant asylum is discretionary, however, we remand for a determination of whether Iffat should be granted asylum. *Id.;* 8 U.S.C. § 1158(b)(1).

A presumption also arises that Iffat is entitled to withholding of deportation. *See Baballah,* 367 F.3d at 1079. The government has not introduced evidence to rebut this presumption. It is therefore " 'more likely than not that [Iffat] would be subject to persecution' " if returned to Pakistan, and she is entitled to withholding of deportation. *Id.* (quoting *INS v. Stevic,* 467 U.S. 407, 424, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984)).

PETITION FOR REVIEW GRANTED; REMANDED.

KLEINFELD, Circuit Judge, dissenting.

I respectfully dissent. Though the BIA did not make an adverse credibility determination, there was substantial evidence in the record as a whole that supported its determination[1] that Iffat had not established a well-founded fear of persecution on account of her actual or imputed political opinion.

Her fear arose most in large part from her husband's death. Though she thought he had been murdered for his politics, the evidence in the record does not establish that this was any more than speculation. There is no evidence that she or anyone in her family saw the body or established in any way that the police account, that he died of a heart attack, was false. The absence of threatening phone calls to her husband further weakened her inference that his death was a political assassination rather than a natural event. He died, she was suspicious of the police, and he had not had a heart attack before—this is not evidence that compels the conclusion that her husband was murdered for political reasons.

The shifting nature of her testimony was enough for the BIA to conclude that she had not established membership in the MQM, as opposed to having made a contribution to it, or that partisan activity is why her house was burned. She did not recognize the people who started the fire and could not identify them, and her testimony could be understood to mean that it was no more than a feeling that they were associated with a hostile political party.

Her inference from two or three men walking toward her daughter that they

---

1. *See Tawadrus v. Ashcroft,* 364 F.3d 1099, 1102 (9th Cir.2004).

were trying to kidnap her for political reasons was likewise weak, since they did not kidnap her daughter. It is unclear whether it was even a kidnaping attempt at all. She also had six months with no threatened phone calls.

Thus, although Iffat may be correct in her inferences and suspicions, under the standard of review we must apply,[2] we must defer to the BIA's judgment regarding whether she has a well-founded fear of persecution on account of her political opinion.

---

**2.** *See Tawadrus,* 364 F.3d at 1102.

