**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 11-1399

YAMINA BADACHE, et al.,

Petitioner, Appellant,

v.

ERIC H. HOLDER, JR.,
Attorney General of the United States,

Respondent, Appellee.

PETITION FOR REVIEW OF AN ORDER OF

THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, <u>Circuit Judge</u>,
Souter, <u>Associate Justice</u>,[*]
and Stahl, <u>Circuit Judge</u>.

<u>Carlos E. Estrada</u>, for appellant.
<u>Tony West</u>, Assistant Attorney General, with whom <u>John S. Hogan</u>
and <u>Michael C. Heyse</u> were on brief, for appellee.

August 21, 2012

---

[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SOUTER, <u>Associate Justice</u>**. Yamina Badache, her husband Salah, and their son Nazim are natives and citizens of Algeria who entered the United States on May 22, 2006 as nonimmigrant visitors, with visas that expired on July 4, 2006. They stayed in the country well past that date, and on April 5, 2007, the Department of Homeland Security charged them with overstaying their visas under 8 U.S.C. § 1227(a)(1)(B) and ordered them to appear at removal proceedings.

The Badaches conceded their removability, but Yamina applied for asylum, <u>see</u> 8 U.S.C. § 1158, withholding of removal, <u>see</u> 8 C.F.R. § 1208.16, and protection under the United Nations Convention Against Torture.[1] Salah and Nazim were listed as derivative applicants on the asylum petition.

Badache stated that she had worked for the Algerian government as a planner of meetings and political summits, although she was not a member of any political party, and owing to her job she often appeared in photographs and on television with prominent Algerian politicians. One day after leaving work, she claims, a man approached her on the street and told her, "You are working with our enemies, and if you do so, you are also our enemy." She suspected that he was a member of an Islamic militant terrorist

---

[1] The Convention Against Torture was implemented in the United States by section 2242(b) of the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. 105-277, 112 Stat. 2681 (Oct. 21, 1998), and 8 C.F.R. §§ 1208.16-1208.18.

group.  She said nothing to him, walked away, and left in a taxi, but she said that the encounter left her frightened enough to quit her job and leave Algeria to seek refuge in the United States.[2] She did not report the incident to her employer or the police before leaving.

An alien is eligible for asylum if she is a "refugee": a person "unable or unwilling to return to" her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42).  If an alien's "life or freedom would be threatened" in the proposed country of removal for the same reasons, 8 U.S.C. § 1231(b)(3), she is entitled to statutory withholding of removal.  Removal may also be withheld under the Convention Against Torture if "it is more likely than not that [the alien] would be tortured if removed to the proposed country of removal."  8 C.F.R. § 1208.16(c)(2).

After a hearing, Badache's applications were denied.  The judge thought she had testified credibly, but still fell short of demonstrating that she had suffered past persecution, had a reasonable fear of future harm, or was likely to face torture if she returned.  The Board of Immigration Appeals affirmed on the

---

[2] A cousin of Badache, also a government employee, had been kidnapped and killed in 1995 in what the police deemed an act of terrorism, and that event contributed to her fear of terrorist violence.

same grounds, and Badache appealed to this court. We find substantial evidence in the record supporting the court's and Board's conclusions, see Abdelmalek v. Mukasey, 540 F.3d 19, 22 (1st Cir. 2008), and therefore affirm.

As to past persecution, Badache's encounter with the supposed Islamic terrorist was an isolated event, in which she suffered no physical harm. Its equivocal character is confirmed by the fact that Badache has relatives still living in Algeria who have not been subject to harm or threats. To be sure, threats alone may amount to persecution if they are severe enough to "add up to more than ordinary harassment, mistreatment, or suffering." Hincapie v. Gonzales, 494 F.3d 214, 217 (1st Cir. 2007). But, as we have held, "[a] series of somewhat vague verbal threats . . . unaccompanied by any significant physical abuse and any government involvement" does not amount to persecution. Abdelmalek, 540 F.3d 23; see Attia v. Gonzales, 477 F.3d 21, 23-24 (1st Cir. 2007) (even death threats coupled with physical abuse may not amount to persecution under the asylum statute). The Board reasonably determined that one vague threat, however unsettling, was not persecution in Badache's home country.

Badache argues that she would be at risk of harm if she returned to Algeria, on account of her previous connection to the government. But, beyond what we have already noted, her only evidence of this risk is a set of documents describing in general

-4-

terms the terrorist menace in Algeria, with the possibility of militants harming persons aligned with the current government. These documents were not in the record below, however, and our review is limited to "the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A). But even if we were to take judicial notice of the presence of terrorists in Algeria, substantial evidence in the record would still support the Board's conclusion that Badache had no well-founded fear of persecution. She quit her government job over five years ago, and therefore has little reason to expect reprisals from terrorist groups for working with government officials. Moreover, as we said before, her extended family has remained in Algeria unharmed, and that suggests a low likelihood of future mistreatment. Budiono v. Mukasey, 548 F.3d 44, 50 (1st Cir. 2008). And because Badache thus failed to show a reasonable possibility of future harm, it follows that she cannot meet the more stringent standard for withholding of removal. See 8 U.S.C. § 1231(b)(3) (removal should be withheld if "the alien's life or freedom would be threatened in the proposed country of removal"); Mediouni v. INS, 314 F.3d 24, 27 (1st Cir. 2002) ("Because the standard for withholding deportation is more stringent than that for asylum, a petitioner unable to satisfy the asylum standard [for future persecution] fails, a fortiori, to satisfy the former." (internal quotation marks omitted)).

-5-

Badache's claim under the Convention Against Torture also fails, from want of evidence that she would "more likely than not . . . be tortured" if she returned to Algeria. 8 C.F.R. § 1208.16(c)(2). Although terrorist organizations have been known to use torture, Badache points to no threat of torture directed towards her, let alone any chance of torture that fits the definition of that term in the regulations implementing the Convention: pain or suffering "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Indeed, she comes no closer to official "consent or acquiescence" than to cite a government amnesty for past acts of terrorism (an argument she apparently did not make before the judge or appeals board).

**Affirmed.**