# United States Court of Appeals
## For the First Circuit

No. 11-1548

EDGAR ROLANDO TAY-CHAN,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Torruella and Boudin, <u>Circuit Judges</u>.

<u>Randy Olen</u> on brief for petitioner.
<u>Ada E. Bosque</u>, Senior Litigation Counsel, Office of
Immigration Litigation, Civil Division, U.S. Department of Justice,
<u>Stuart F. Delery</u>, Acting Assistant Attorney General, Civil
Division, and <u>William C. Peachey</u>, Assistant Director, Office of
Immigration Litigation, on brief for respondent.

November 9, 2012

**LYNCH**, **Chief Judge**.  On June 11, 2009, an Immigration Judge ("IJ") denied petitioner Edgar Rolando Tay-Chan's application for withholding of removal but granted his application for voluntary departure.  The Board of Immigration Appeals ("BIA") affirmed the IJ's decision and dismissed Tay-Chan's appeal from this decision on April 14, 2011.  Tay-Chan timely petitions for review.  We deny the petition.

I.

Tay-Chan is a native and citizen of Guatemala who entered the United States without inspection either in August of 2004 (according to the Immigration and Naturalization Service ("INS") of the U.S. Department of Justice) or June or July of 2003 (according to Tay-Chan's own testimony in removal proceedings).

On April 25, 2006, INS issued Tay-Chan a notice to appear in removal proceedings.  On March 19, 2008, Tay-Chan conceded in removal proceedings that he was removable as charged in the notice to appear, but refused to designate a country for removal purposes.  Instead, he sought withholding of removal or, in the alternative, voluntary departure.[1]

---

[1] The IJ observed that "[t]he respondent has not applied for, nor is he eligible for, political asylum.  The respondent arrived in the United States in July of 2003, and did not submit his application for asylum until March 19, 2008."  Though the BIA noted that "it appears that the respondent only sought withholding of removal and is not contesting the Immigration Judge's finding that his asylum application was untimely filed," it "nonetheless affirm[ed] that his application was time-barred."  Tay-Chan does not challenge this finding before us.

-2-

At his June 11, 2009 hearing, Tay-Chan testified that he was born and lived in Guatemala, where he and members of his family experienced several incidents of violence, and that he was thirty years old.  In 1986, Tay-Chan's uncle was "kidnapped, and he disappeared."  Tay-Chan speculated as to the reason: "[i]t could have been the police.  It could have been the armed forces.  But I don't know."  Tay-Chan's declaration added that it might have been "guerrillas" who kidnapped his uncle.  In any event, Tay-Chan and his family "never heard from him again."

Tay-Chan's declaration also stated that in 1995 or 1996, he "was shot at, an act of random violence, by someone that I did not know."  Tay-Chan testified that he was shot five times and still had one bullet in his body, and repeated that "I don't know who it was."  Tay-Chan went to the authorities after the shooting; though the police "took note of it," they never investigated, and did not arrest or prosecute anyone.  Tay-Chan admitted that there were no witnesses to his shooting, and agreed that "it's understandable that the police weren't able to make an arrest . . . since nobody saw it."  He remained in Guatemala for another seven or eight years without harm.

In April of 2003, Tay-Chan's brother, a bus driver, was shot to death for refusing to pay tribute to the Maras.  "Maras" refers to one or more Guatemalan gangs.  See Socop v. Holder, 407 F. App'x. 495, 496 (1st Cir. 2011); Picon-Aragon v. Attorney Gen.

-3-

of the U.S., 444 F. App'x. 601, 602 (3d Cir. 2011).  Tay-Chan testified that he did not "know if [the authorities] looked or not, but there was nobody detained for it."  One or two of Tay-Chan's cousins died "under the same conditions or the same causes"; though the authorities may have investigated these incidents, they never found the guilty persons.

In June or July of 2003, Tay-Chan left Guatemala and came to the United States.  As he testified, he "came from Guatemala due to the crime rate.  Well, because of the economic situation, the problem with the maras."  Tay-Chan has since married and had a child here[2] who was nine months old at the time of Tay-Chan's testimony.

Tay-Chan testified to his belief that neither the police nor the military could protect him if he were to return to Guatemala because "there are many people in the armed forces, in the military and in the police that are in -- with the people that are in the maras or the burglars."  He elaborated that in Guatemala,

> I don't think that there is any place where you can feel
> safe.  Like I said, you might buy your own house.  And,
> then, these people come, and they demand a monthly rate
> from you, so that they won't kill you.  And it's the same
> thing with -- if you want to have a business.  They, they
> will ask the same.  They, they will ask you to pay for
> your security.  You can't have a good quality of life.
> You cannot buy your car.  You cannot have money in the

---

[2] Tay-Chan also had two children, aged eight and ten years old at the time of his testimony, in Guatemala.

-4-

bank.  Because they'll find out about these things.  And, so, they, they, they come.  And, and they extort.  And they don't let you build up your life.

The IJ's oral decision found Tay-Chan's testimony to be credible, and that Tay-Chan had not been a victim of past persecution on account of one of the statutory grounds, noting that "the respondent is unable to ascertain the reason for him having been shot or by whom."  The IJ also concluded that it was not "more likely than not that [Tay-Chan] would face persecution on account of one of the five statutory grounds," since "[w]hat we have here is that the respondent fears harm from ordinary criminals" whose motivation was "merely to steal [Tay-Chan's] money."  The IJ further noted that following Tay-Chan's shooting, he "remained in Guatemala thereafter for a period of seven or eight years without further harm having come to him."  The IJ considered the mistreatment Tay-Chan's family members suffered in Guatemala, but noted that there was no evidence as to the motive behind some of this mistreatment.  The IJ denied Tay-Chan's application for withholding of removal[3] but granted him voluntary departure.

The BIA agreed that Tay-Chan was ineligible for withholding of removal and dismissed his appeal.  As the BIA explained,

---

[3]  Though Tay-Chan did not apply for relief under the Convention Against Torture ("CAT"), the IJ nonetheless found that Tay-Chan was ineligible for such relief.

The group [Tay-Chan] seeks to define -- victims of gang threats and possible extortion -- is overly broad and not defined with sufficient particularity to delineate its membership. It also lacks social visibility to be perceived as a group by society and is not marked by a common, immutable characteristic, such as shared past experience or sex, color, or kinship ties. See Matter of C-A-, 23 I&N Dec. 951, 958-59 (BIA 2006). The respondent has therefore failed to establish that a statutorily enumerated ground, be it membership in a particular social group or any other protected ground like political opinion, was or will be at least one central reason for his fear of returning to Guatemala and that there is a clear probability of his persecution, if returned there. See INS v. Cardoza-Fonseca, 480 U.S. 421 (1987); INS v. Stevic, 467 U.S. 407 (1984). It is, moreover, well-established that an asylum applicant's fear of harm resulting from general conditions of violence and civil unrest affecting the home country's populace as a whole does not constitute a "well-founded fear of persecution" within the meaning of the Act, much less a clear probability of persecution. See Matter of S-V-, 22 I&N Dec. 1306 (BIA 2000).

Tay-Chan timely sought review.

## II.

Tay-Chan's petition for review argues that the BIA erred by (1) determining that Tay-Chan had not been a victim of past persecution in Guatemala, and (2) holding that Tay-Chan was not a member of a particular social group. He also asserts that imposing a requirement of "social visibility" as to "social groups" "constitute[s] [an] arbitrary and capricious agency interpretation[]."

Where the BIA affirms an IJ's ruling while analyzing the bases offered for that ruling, we review the IJ's and BIA's opinions as a unit. Hussain v. Holder, 576 F.3d 54, 57 (1st Cir.

-6-

2009). We consider only the record upon which the order is based, 8 U.S.C. § 1252(b)(4)(A)-(B), and accept administrative findings of fact so long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Seng v. Holder, 584 F.3d 13, 17 (1st Cir. 2009) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)) (internal quotation marks omitted). We may overrule the BIA's decision only if there is an error of law or the evidence "compels a contrary conclusion." Segran v. Mukasey, 511 F.3d 1, 5 (1st Cir. 2007). We review the BIA's conclusions of law de novo, giving some deference to its interpretation of statutes and regulations within its purview. Mendez-Barrera v. Holder, 602 F.3d 21, 24 (1st Cir. 2010).

Withholding of removal protects an otherwise removable alien from removal to a country where "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Withholding of removal "imposes a 'more stringent burden of proof on an alien than does a counterpart claim for asylum,'" Morgan v. Holder, 634 F.3d 53, 60 (1st Cir. 2011) (quoting Rodriquez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005)), because "the alien must demonstrate 'a clear probability of persecution, rather than merely a well-founded fear of persecution.'" Id. (quoting Ang v. Gonzales, 430 F.3d 50, 58 (1st Cir. 2005)). An applicant may show that he was

-7-

subject to past persecution; this creates a rebuttable presumption that he will be subject to future persecution. 8 C.F.R. § 1208.16(b)(1). Alternatively, an applicant may carry this burden by demonstrating that he will "more likely than not" face future persecution. Id. § 1208.16(b)(2). Under the REAL ID Act of 2005,[4] in addition to meeting his burden of showing persecution, Tay-Chan must show that one of the five protected grounds was or will be at least "one central reason" for his persecution. 8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(C).

The term "social group," one of the protected grounds, is not defined by statute, and we have upheld the BIA's definition.[5] See, e.g., Beltrand-Alas v. Holder, 689 F.3d 90, 93-94 (1st Cir. 2012); Larios v. Holder, 608 F.3d 105, 108 (1st Cir. 2010); Mendez-Barrera, 602 F.3d at 25; Faye v. Holder, 580 F.3d 37, 41 (1st Cir. 2009); Scatambuli v. Holder, 558 F.3d 53, 59-60 (1st Cir. 2009). Accord: Orellana-Monson v. Holder, 685 F.3d 511, 519-20 (5th Cir. 2012); Rivera-Barrientos v. Holder, 666 F.3d 641, 648-53 (10th Cir.

---

[4] Because Tay-Chan submitted his application for withholding of removal on March 19, 2008, his application is governed by the REAL ID Act of 2005 (which became effective on May 11, 2005). See 8 U.S.C. § 1158 note (Effective Date of 2005 Amendment); Díaz-García v. Holder, 609 F.3d 21, 27 (1st Cir. 2010).

[5] Petitioner acknowledges our case law but asks that we change it in light of the Seventh Circuit decision in Gatimi v. Holder, 578 F.3d 611 (7th Cir. 2009). Our prior precedents bind the panel. See Mongeau v. City of Marlborough, 492 F.3d 14, 18-19 (1st Cir. 2007). Further, petitioner makes no claim that there has been inconsistent application of the standard as to the claim he is making. And he did not make any such argument to the BIA.

2012); <u>Al-Ghorbani</u> v. <u>Holder</u>, 585 F.3d 980, 994 (6th Cir. 2009); <u>Ramos-Lopez</u> v. <u>Holder</u>, 563 F.3d 855, 858-61 (9th Cir. 2009); <u>Davila-Mejia</u> v. <u>Mukasey</u>, 531 F.3d 624, 628-29 (8th Cir. 2008); <u>Ucelo-Gomez</u> v. <u>Mukasey</u>, 509 F.3d 70, 73 (2d Cir. 2007) (per curiam).

"[T]he BIA has described a social group as a group of persons sharing a common, immutable characteristic that makes the group socially visible and sufficiently particular." <u>Mendez-Barrera</u>, 602 F.3d at 25. For a group to satisfy the social visibility criterion, "it must be generally recognized in the community as a cohesive group," <u>id.</u> at 26, and "[t]he relevant inquiry is whether the social group is visible in the society, not whether the alien herself is visible to the alleged persecutors," <u>id.</u> at 27. The particularity inquiry concerns whether the group can "be defined with sufficient particularity to avoid indeterminacy." <u>Scatambuli</u>, 558 F.3d at 59 (citing <u>In re A-M-E & J-G-U-</u>, 24 I. & N. Dec. 69, 76 (BIA 2007)).

Tay-Chan argues that the IJ and BIA erred in concluding that he had not been the victim of past persecution in Guatemala because "[t]he harm suffered by Mr. Tay-Chan and his family were not isolated incidents, but a pattern of persecution directly related to Mr. Tay-Chan by way of their family relationship." Tay-Chan asserts that his "testimony, which was accepted as true, established that he was shot by individuals he assumed were gang

-9-

members; his brother was killed by gang members during an extortion attempt; two cousins were killed, and his uncle was kidnapped and presumably killed as well."

"[I]t is not enough merely to show that multiple members of a single family had negative experiences. Those experiences would, at the very least, have to rise to the level of persecution and be causally linked to family membership." Ruiz v. Mukasey, 526 F.3d 31, 38 (1st Cir. 2008). Tay-Chan admitted he did not know the motives behind the mistreatment he and his uncle experienced in Guatemala, and that the killings of his brother and cousins were economically motivated. The IJ and BIA thus did not err in concluding that Tay-Chan had failed to demonstrate past persecution on account of a protected ground. That finding of a failure to show past persecution means there was no presumption of future persecution.

As to future persecution, Tay-Chan disputes the BIA's affirmance of the IJ's finding that he has not shown that it was more likely than not that he would face persecution on the basis of a statutorily protected ground. He argues the BIA erred because he belongs to what he terms a "social group" which faces persecution.

The BIA reasonably understood Tay-Chan to be claiming that this social group was "victims of gang threats and possible extortion." The BIA reasonably rejected this purported "social group" as overly broad and having insufficient particularity to

meet the social group criterion, and explained why.  It made no error.

It also stressed that fear of harm from general conditions of violence and civil unrest does not even establish a "well-founded fear of persecution," the asylum standard, much less a clear probability of persecution, the withholding of removal standard.  We have agreed that "mere vulnerability to criminal predations cannot define a cognizable social group." Arévalo-Girón v. Holder, 667 F.3d 79, 83 (1st Cir. 2012).

On petition to this court, Tay-Chan shifts ground and says that the BIA mischaracterized his proposed social group in this case.  He now argues that the social group is "expatriates returning to Guatemala after long residence in the United States who return with their United States citizen children."  Tay-Chan made no such claim to the IJ[6] or the BIA as to the social group on which he relied.  At most, he asserted to the BIA that his having a child was another factor adding to his risk.  His failure to identify such a group before the IJ or BIA is an omission for which he alone is responsible.  It is certainly not grounds for granting his petition for review.  And the BIA reasonably rejected the argument he did make.

---

[6] Before the IJ, Tay-Chan asserted that if he returns to Guatemala, he will be viewed as a person who is returning from the United States and has money.

Finally, Tay-Chan argues that "the Court's acceptance of the Board's recently-enacted concept of 'social visibility' as a <u>requirement</u> for qualification as a particular social group . . . . must be reexamined, particularly in light of the recent decision of the United States Supreme Court in <u>Judulang v. Holder</u>[], 132 S. Ct. 476 (2011)." We have already rejected this argument, explaining that "<u>Judulang</u> is inapposite to this case as it involved a different statutory provision and did not involve an agency's interpretation of any statutory language." <u>Beltrand-Alas</u>, 689 F.3d at 93.

We deny Tay-Chan's petition for review.