# United States Court of Appeals
## For the First Circuit

---

No. 12-1657

MOHAMMAD ILYAS JAVED,

Petitioner,

v.

ERIC H. HOLDER, JR.,
Attorney General of the United States,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

---

Before

Torruella, Stahl, and Lipez,
Circuit Judges.

---

Randy Olen on brief for petitioner.
Edward C. Durant, Attorney, Office of Immigration Litigation, Civil Division, Stuart F. Delery, Principal Deputy Assistant Attorney General, and Holly M. Smith, Senior Litigation Counsel, on brief for respondent.

---

May 24, 2013

---

**STAHL, <u>Circuit Judge</u>**.  Mohammad Ilyas Javed petitions for review of a decision by the Board of Immigration Appeals (BIA or Board) affirming the denial of his applications for withholding of removal and protection under the Convention Against Torture (CAT). Because the BIA's withholding-of-removal decision is contrary to the evidence, we grant the petition in part and remand the case for further proceedings.

## I.  Background

Javed was born in 1962 in Gujrat, a district of Punjab Province, in Pakistan.  He attended high school and then studied business administration and accounting in Gujrat.  He went on to earn degrees in commerce and law from the University of Karachi, completing his studies in 1987.  He worked for a Karachi accounting firm until 1990 and then returned to Batore, his home village in Gujrat.   Upon his return, he joined a law firm there.

While at the law firm, Javed was assigned to a case stemming from a conflict between rival political factions: the Batore group and the Hunj group (each named after its home village).  These groups were "subsidiaries" of the ruling Pakistan Muslim League and the Pakistan People's Party, respectively. (Javed was not a member of either party.)  Some members of the Hunj group had been injured in a shooting that resulted from a dispute over an apparently rigged election in October 1990.  Javed and his firm represented the Hunj group in their efforts to prosecute the

-2-

case in court. In Pakistan, private parties can, through their attorneys, initiate criminal cases (although there are public prosecutors as well). For that process to begin, the police must file a particular document; Javed and his law firm were eventually able to persuade the police to do so, but not before he and others were arrested during a protest. Javed was held by the local police for "a few days" and then released. Thereafter, the court case commenced, but was prolonged by repeated adjournments. The local police, apparently seeking to shelter the Batore group from punishment, were complicit in these delays.

While the case was slowly proceeding, Javed came under pressure from the Batore group, which was based in his home village of Batore. After hearing about his role representing the Hunj group in the case, the Batore group began to threaten Javed, and, on "many" occasions, members of the group "got[] hold of [him] and beat [him] up." They threatened to kill him if he did not stop representing the Hunj. As Javed described it, "the Batore group thought that [he] was affiliated with the Hunj group and they thought of [him] as their enemy."

In 1991, Javed left the law firm and started his own practice. He opened an office in a small building near the local courthouse. The local government, however, under the "control" of the Batore group, demolished the office building.

In 1993, as a result of the threats against him, Javed fled Pakistan. The Hunj-Batore litigation was still ongoing when he left, but apparently ended in 1998. Javed moved to South Africa and worked in a supermarket. His wife and two children remained in Pakistan; he returned to visit them twice but avoided his village, instead staying with a relative elsewhere and having his family come meet him there. Javed's wife passed away in early 1999, after which he came to the United States. His two children (now in their late teens and early twenties, respectively) still live in Pakistan; he supported them during his absence by sending them money from abroad.

Javed entered the United States as a non-immigrant visitor in February 1999. He remained in the country beyond the time authorized, and was thus served with a Notice to Appear in March 2002. In 2005, Javed appeared before the Immigration Judge (IJ), conceded removability, and applied for withholding of removal and CAT protection. He offered various materials in support of his applications and testified to the events described above. He also testified that the threats against him continue even in his absence. His friends in Pakistan report that the Batore continually tell them: "[W]henever [Javed] returns over here we are not going to leave him alive." He also expressed concern that he would be even less safe in Pakistan now than when he left because

the Hunj group has ceased to exist politically and because of the prevalence of contract killings.

The IJ denied Javed's applications. He found that Javed was a credible witness and had given testimony that was both internally consistent and consistent with the record. He concluded, however, that Javed had not established that he had experienced persecution "as a result of an immutable characteristic."[1] Rather, the IJ concluded that the threats and violence Javed experienced were the result of "his involvement in litigation with a violent and politically influential organization." The IJ also believed that the passage of time had likely "removed, or greatly lessened, any threat to" Javed's safety. He therefore found that Javed was not eligible for withholding of removal. As to Javed's application for CAT protection, the IJ found no "mention" of torture in Javed's testimony or affidavit. The IJ noted that Javed had been detained by the local police for several days, but pointed out that he had apparently not suffered any abuse during that period. Thus, the IJ denied the CAT application as well.[2]

---

[1] As Javed points out, the phrase "immutable characteristic" refers to the statutory term "particular social group," and not to the other protected grounds of race, religion, nationality, and political opinion. Mayorga-Vidal v. Holder, 675 F.3d 9, 14 (1st Cir. 2012). Insofar as the IJ used it as short-hand for all of the protected grounds, that usage was misleading.

[2] The IJ also denied a motion by the government to pretermit the proceedings on the ground that Javed had filed

The BIA affirmed. It agreed with the IJ that Javed "was targeted because of his involvement as an attorney in litigation, which does not establish a nexus between the harm [he experienced] and a protected ground." The Board also found that Javed had not experienced harm that rose to the level of "persecution" within the meaning of the statute, in part because he was, in the Board's view, embroiled in a purely private dispute. And the Board noted that Javed's family had apparently remained in Pakistan without incident since his departure, which it believed undermined his argument that he would face persecution if repatriated. Finally, the Board agreed with the IJ that Javed had not been tortured and that the record did not establish a sufficient likelihood of future torture. Accordingly, it affirmed the denial of both applications.

## II. Discussion

The BIA's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Thus, we will "accept the BIA's findings so long as they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Scatambuli v. Holder, 558 F.3d 53, 58 (1st Cir. 2009) (quoting Sharari v. Gonzáles, 407 F.3d 467, 473 (1st Cir. 2005)). We review the BIA's legal interpretations de novo. See id. Where,

---

fraudulent supporting materials; the IJ found insufficient evidence to support the conclusion that Javed's application was fraudulent or frivolous.

as here, the BIA affirms and elaborates on the IJ's findings, we review both decisions.  Chanthou Hem v. Mukasey, 514 F.3d 67, 69 (1st Cir. 2008).

We begin with Javed's application for withholding of removal.  Withholding "protects an otherwise removable alien from removal to a country where 'the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.'"  Tay-Chan v. Holder, 699 F.3d 107, 111 (1st Cir. 2012) (quoting 8 U.S.C. § 1231(b)(3)(A)).  To be eligible for this remedy, a petitioner must make one of two showings: (i) that he has suffered past persecution on account of one of the enumerated grounds, which creates a rebuttable presumption of future persecution; or (ii) that future persecution on account of one of these grounds is more likely than not to occur.  Id.; see 8 C.F.R. § 1208.16(b)(1)-(2).  Under the REAL ID Act of 2005, persecution is "on account of" a protected ground if that ground "was or will be at least 'one central reason' for [the] persecution."  Tay-Chan, 699 F.3d at 111.

Javed challenges the BIA's withholding determination on two grounds.  First, he contends that the record showed that he experienced past persecution, entitling him to a presumption that he had a well-founded fear of future persecution (which he did not receive).  Second, he attacks the conclusion that his troubles

stemmed from his litigation activities rather than any protected ground; he says that the record reveals that his representation of the Hunj group caused the Batore group to impute a political opinion to him.

In deciding that Javed had not suffered past persecution, the Board concluded (with scant explanation) that the threats and violence he experienced did not rise to the level of persecution, which requires harm that goes beyond mere harassment, unfairness, or unpleasantness. See Attia v. Gonzales, 477 F.3d 21, 23 (1st Cir. 2007). The Board also seemed to conclude that Javed had not shown any government involvement in the threats and beatings. See Nikijuluw v. Gonzales, 427 F.3d 115, 121 (1st Cir. 2005) (persecution requires "government action, government-supported action, or government's unwillingness or inability to control private conduct"). It is true that a single, vague threat or even a number of non-specific threats, "unaccompanied by any significant physical abuse and any government involvement," will be unlikely to constitute persecution. Badache v. Holder, 492 F. App'x 124, 125 (1st Cir. 2012) (Souter, J.) (quoting Abdelmalek v. Mukasey, 540 F.3d 19, 22 (1st Cir. 2008)) (internal quotation mark omitted). But credible, specific threats can amount to persecution if they are severe enough. Id.; see Sok v. Mukasey, 526 F.3d 48, 54-55 (1st Cir. 2008). "[T]hreats of murder" fit squarely within this rubric. Hincapie v. Gonzales, 494 F.3d 213, 217 (1st Cir. 2007);

-8-

see also Ang v. Gonzales, 430 F.3d 50, 56 (1st Cir. 2005); Un v. Gonzales, 415 F.3d 205, 210 (1st Cir. 2005).  And the addition of physical violence, although not required, makes a threat more likely to constitute persecution.  See Gilca v. Holder, 680 F.3d 109, 115 (1st Cir. 2012).  Here, the record compels the conclusion that Javed was subjected to threats and violence that rose to the level of past persecution.

To begin with, the Board was wrong to say that the threats and beatings Javed experienced were part of a purely private conflict.  See Nikijuluw, 427 F.3d at 121; cf. Hussain v. Holder, 576 F.3d 54, 58 (1st Cir. 2009).  Javed testified that the local authorities condoned or participated in the attacks on him, including by demolishing his office building.  He was also arrested and detained by local police.  He further testified that the police and local officials protected the Batore, apparently at the behest of the ruling national political party, with which the Batore group was affiliated.  In light of this credible and uncontested testimony, the Board's unelaborated conclusion that this dispute lacked government involvement is wholly unsupported by the record.

Likewise, the record squarely contradicts the Board's determination that Javed experienced mere unpleasantness that did not rise to the level of persecution.  As noted above, specific, credible threats, especially when bolstered by violence, can constitute persecution.  See Badache, 492 F. App'x at 125.  And

-9-

"threats of murder" go well beyond the "ordinary harassment" that does not qualify.  Hincapie, 494 F.3d at 217.  Here, Javed testified -- credibly, according to the IJ -- that the Batore group threatened to kill him on "many" occasions.  These threats continued, via intermediaries, even after he fled Pakistan.  And the threats were accompanied by violence.  Although the Board and the IJ said (somewhat euphemistically) that Javed was "manhandled" by the Batore, Javed testified that he was "beat . . . up" "many" times.  And then there was his arrest and detention by the police as a result of his protests on behalf of the Hunj.  See Sok, 526 F.3d at 54 (finding that a three-day detention after a protest rally, in conjunction with an assault and serious death threats, suggested past persecution).  The demolition of Javed's office by the Batore-controlled local government only added to this pattern. Finally, we must be mindful that the genesis of these events was an incident in which the same group that threatened to kill Javed shot people with whom he was associated.  This is not a case in which the petitioner was threatened, but was "never in serious danger." See Vilela v. Holder, 620 F.3d 25, 29 (1st Cir. 2010).  Nor were these isolated incidents.  Cf. Tasya v. Holder, 574 F.3d 1, 5 (1st Cir. 2009).  In sum, the record, considered as a whole, compels us to find that Javed experienced past persecution.  Cf. Sok, 526 F.3d at 53-55; Iffat v. Gonzales, 126 F. App'x 862, 864 (9th Cir. 2005) (specific death threats, arson of petitioner's home, and the

attempted abduction of her daughter cumulatively constituted past persecution). Accordingly, Javed was entitled to a presumption of future persecution, Tay-Chan, 699 F.3d at 111, which he did not receive.

Nevertheless, the Board and the IJ's shared error as to past persecution would be harmless if they were correct that the persecution Javed experienced was not "on account of" a protected ground. But they were not correct. Both the Board and the IJ concluded that Javed "was targeted because of his involvement as an attorney in litigation," and not on the basis of any protected ground. To be sure, the record reflects that Javed's involvement in the Hunj-Batore litigation was a catalyst for his persecution. But Javed also testified that, as a result of his representation, "the Batore group thought that [he] was affiliated with the Hunj group and they thought of [him] as their enemy." He went on to explain that, in the political and social climate in Gujrat, assisting a rival political party was tantamount to joining that party. In fact, in his case, it was apparently perceived as an egregious betrayal, since Javed was from Batore village, and thus would have been expected to support the political group that carried the village's name. As he put it, "whoever belongs to that village has to go along with [the village's ruling party] and anybody who tries to do something against them is considered their enemy." The essence of Javed's testimony was that the Batore group

attacked Javed because they thought, mistakenly, that his representation of the Hunj revealed him to be their political opponent. Put another way, they perceived his legal advocacy as a manifestation of his political beliefs. The fact that this testimony came amidst a discussion of Javed's political affiliations bolsters that conclusion. See Mayorga-Vidal v. Holder, 675 F.3d 9, 18 (1st Cir. 2012) ("Political persecution may be grounded on an imputed political opinion, whether or not the opinion is correctly or incorrectly attributed to the alien."); see also Manzur v. U.S. Dep't of Homeland Sec., 494 F.3d 281, 294 (2d Cir. 2007) (cautioning against "an impoverished view" of what constitutes persecution on account of a political opinion).

We think this factual testimony about the political implications of Javed's representation is different from a petitioner's conclusory assertion as to his persecutor's motives, which we need not accept. See Ali v. Gonzales, 190 F. App'x 13, 15 (1st Cir. 2006). Javed's credible, factual testimony amply established that his persecutors imputed a political opinion to him (albeit incorrectly), and that this opinion was at least a "central reason" for their attacks on him. Cf. Manzur, 494 F.3d at 294 (faulting the IJ for concluding that a petitioner's efforts to have a soldier suspected of assassinating her husband prosecuted could not have resulted in persecution on the basis of imputed political opinion); Singh v. Ilchert, 69 F.3d 375, 379 (9th Cir. 1995)

-12-

(finding that the petitioner was persecuted on the basis of imputed political opinion when authorities abused him because of his association with political dissidents). The Board and IJ's contrary conclusion is not supported by the record.

At this point, we could find these dual errors harmless only "if the record compelled a finding that any presumption of future threats was rebutted by 'a fundamental change in circumstances such that [petitioner's] life or freedom would not be threatened.'" Un, 415 F.3d at 210 (quoting 8 C.F.R. § 1208.16(b)(1)(i)(A)). But "[t]he government has not made this argument, addressing only the converse issue (which assumes that petitioner bore the burden of proof) of whether there was substantial evidence supporting the . . . finding that petitioner failed to establish the likelihood of [future] harm." Id. Consequently, we must remand the case. See id. On remand, Javed should have the benefit of the presumption of future persecution, and the government should have the opportunity to attempt to rebut that presumption.

In closing, we address Javed's CAT-protection claim. To avoid removal under the CAT, a petitioner must show that he will more likely than not face torture upon repatriation, with the consent or acquiescence of the government then in power. Mariko v. Holder, 632 F.3d 1, 7 (1st Cir. 2011); Ahmed v. Holder, 611 F.3d 90, 98 (1st Cir. 2010). "Torture is . . . any act by which severe

-13-

pain or suffering, whether physical or mental, is intentionally inflicted on a person" for various reasons. 8 C.F.R. § 208.18(a)(1). In other words, it is "an extreme form of cruel and inhuman treatment." Id. § 208.18(a)(2).

On this issue, the IJ and BIA's determination is supported by the record. There is no evidence of past torture, and Javed does not argue otherwise. Nor does documentary evidence of the general use of torture by Pakistani authorities suffice, without more, to establish that Javed himself is more likely than not to be tortured there. It is true that Javed's persecutors were associated with the ruling political party, but we cannot, on that basis alone, make the inferential leap he suggests, which is that he is therefore likely to be tortured by the national government. Beyond these cursory points, Javed has not offered any other basis to disturb the Board's and IJ's CAT rulings. Therefore, we will deny his petition insofar as it seeks review of the denial of his CAT application.

## III. Conclusion

For the foregoing reasons, we grant in part and deny in part Javed's petition for review, and remand this case to the BIA for further proceedings consistent with this opinion.

-14-