Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 12-1348

VINICIOS DE AGUIAR FERNANDES-JORDAO,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Howard and Kayatta, Circuit Judges.

Stephen A. Lagana on brief for petitioner.
Christina Bechak Parascandola, Trial Attorney, Office of
Immigration Litigation, Civil Division, U.S. Department of Justice,
Stuart F. Delery, Principal Deputy Assistant Attorney General,
Civil Division, and Richard M. Evans, Assistant Director, on brief
for respondent.

June 25, 2013

**LYNCH, Chief Judge**.  This is a petition for judicial review of a final order of removal following the Board of Immigration Appeals' (BIA) denial of an appeal from an immigration judge's (IJ) decision denying asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  We deny the petition.

Petitioner Vinicios Fernandes-Jordao, a native and citizen of Brazil, entered the United States in April 2005.  On April 12, 2006, he made an application for asylum and other relief, which the IJ found to be timely.  The provisions of the REAL ID Act of 2005 therefore apply.  The underlying claim is one of past political persecution by a political party in Brazil and fear of future persecution.  We describe only the basics of his case.

Fernandes' theory of political persecution was that he had lived in the city of Engenheiro Caldas in Minas Gerais, Brazil, where he and his father had been active members of a political party, which we shall call Party A (the PMDB).  Fed up with corruption in Party A, they switched their allegiance to Party B (the PSDB) shortly before an election in 2005.[1]  Unhappy with their

[1] There is some confusion over the date of the election. Fernandes testified that his father died on October 4, 2004, consistent with his father's death certificate.  He also stated that his father died the day after the election, which would place the election in 2004.  However, in his written personal statement submitted with his asylum application dated March 13, 2006, petitioner stated the election was held "last year," and that his father switched party affiliations "last year," placing the election in 2005.  The discrepancy made no difference in the IJ's

defection, Party A first tried unsuccessfully to induce the return of the two prodigals with money.  The day after the election, petitioner's father died in what petitioner says was a mysterious automobile accident.  His father was returning after driving an attorney who was working to release from jail the brother of the Party B mayoral candidate.  Petitioner blames Party A for the "accident," but offered no evidence to support that assertion.  The IJ did not credit the uncorroborated theory.  Petitioner did not go to the police authorities about the accident because he feared retaliation.

What the IJ did credit was Petitioner's testimony that, after his father's death, he received eight calls threatening him, which he again attributed to Party A.  He did not describe what was said, only that they were threats.  Petitioner also testified that he fled within a week of his father's death, moving to three other Brazilian cities, where he was not threatened.[2]  But his mother, who still was in his home city, did receive a threat.  His mother, however, had never switched parties and remained loyal to and supported Party A.  There was no corroborative evidence for any of

decision or in its understanding of the order of events.  So, we adopt the IJ's statement that the election occurred in 2005.

[2] Petitioner supported his case with a series of declarations from people in Brazil affirming he had worked for Party B and stating their view that he had to leave because of threats and harassment.  But the petitioner has admitted he suffered no physical harm.

these nine threats. Petitioner admitted that he had never been physically harmed and that there is no evidence that he had been arrested or detained by the police.

In an oral decision, the IJ found that petitioner was credible but that his reported experiences of receiving eight threatening calls and fearing that Party A would harm him did not rise to the level of showing past persecution in Brazil. The IJ cited Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005) (to qualify as persecution, the experiences must rise above unpleasantness, harassment, and even basic suffering).

As to fear of future persecution, the IJ pointed out that any such fear would not be well founded because, inter alia, there was a 2008 superseding mayoral election and the candidate who won in 2005 was no longer in power. Further, petitioner's mother had never left Party A.[3]

The BIA found, on de novo review, that the IJ correctly held any mistreatment did not rise to the level of persecution. And so petitioner was not entitled to a presumption of future persecution. See Rodriquez-Ramirez v. Ashcroft, 398 F.3d 120, 124 (1st Cir. 2005). It also held that petitioner had not shown a well-founded fear of future persecution, and so his claims failed.

---

[3] The IJ also found that even if petitioner was persecuted, he could relocate elsewhere. The BIA did not reach this ground.

-4-

Petitioner fell short of demonstrating that he had suffered past persecution or had a reasonable fear of future harm. A single, vague threat or even a number of non-specific threats "unaccompanied by any significant physical abuse and any government involvement" is unlikely to constitute persecution. Badache v. Holder, 492 F. App'x 124, 125 (1st Cir. 2012) (quoting Abdelmalek v. Mukasey, 540 F.3d 19, 23 (1st Cir. 2008)) (internal quotation mark omitted). The record does not compel a contrary conclusion. See INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992); Lopez de Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007).

Our recent opinion in Javed v. Holder, 715 F.3d 391 (1st Cir. 2013) supports our result here. In Javed we remanded because the BIA made two errors. Id. at 396-97. One mistake was the BIA's finding that Javed's experiences, much more severe than in this case, did not amount to persecution. Id. at 396. The evidence there was of a number of severe specific threats, including threats of murdering him, delivered to him personally. Id. Further, the threats continued, through intermediaries, even after he fled Pakistan. Id. In addition, Javed suffered from physical violence: he had received many beatings from the group which had threatened him. Id. He was also arrested and detained by police, who supported the group threatening him, and his office was demolished by the government authorities under the control of that group. Id. The factual contrast with this case is plain. Here, the phone

-5-

threats were not specific, they were limited, and no physical harm to petitioner ensued.

Still, petitioner makes the argument that we must return the case to the agency for reconsideration because both the IJ and BIA made a clear error of fact in their findings. That error of fact, he says, is that the IJ incorrectly stated that the winner of the 2005 election was the candidate of Party B, the new party, when in fact the winner was the candidate of the old party, Party A. The BIA also said petitioner testified that the new party won in 2005.

There are several problems with this assertion. One is that petitioner did testify confusingly in a way which could have led the IJ to this statement. It is also doubtful that the misstatement in one line of the IJ's opinion about who won the 2005 election showed any misunderstanding because in other findings the IJ made it clear that, as a result of the 2008 election,[4] the 2005 winner was no longer in office.

The biggest problem for petitioner is that the "mistake" is not material to the conclusion on which the denial of relief rests: that even assuming the motivation for the threats was retaliation from Party A, petitioner's experiences simply did not

---

[4] The government's brief claims that Party B won the 2008 election, but the record is at best confusing on that point. In any event, the record is clear and the IJ recognized that the candidate who won in 2005 (from Party A) was not elected in 2008.

amount to persecution nor provide a reasonable basis for him to fear future persecution. That is true regardless of whether the IJ made a mistake about who won the 2005 election. Since the asylum claim fails, so too does the withholding of removal claim. See Lobo v. Holder, 684 F.3d 11, 19-20 (1st Cir. 2012). The CAT claim has been waived.

While we deny the petition, we express our disappointment that the brief from respondent completely ignored petitioner's mistake of fact argument.

The petition is denied.